HOYT M. CARTER, Appellee, v. LESLIE JETT, Sheriff of Davidson County, Tennessee, Appellant.—370 S.W. (2d) 576.

Middle Section at Nashville. February 21, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Neill S. Brown, Newman Brandon, Nashville, for appellant.

W. Ovid Collins, Jr., Nashville, for Globe Indemnity Co.

J. F. Doty, Stockell, Rutherford & Crockett, Nashville, for appellee.

CHATTIN, J. Complainant below, Hoyt M. Carter, filed this bill in Part I of the Chancery Court of Davidson County, Tennessee, against Sheriff Leslie Jett, of the same County, seeking to have a contract between the parties declared null and void. The bill charges the complainant was, at the time of the execution of the contract, working under Sheriff Jett as a Field Deputy Sheriff. The contract is exhibited to the bill and the pertinent parts of the contract for our consideration are as follows:

"1. The Deputy hereby agrees to devote his time and best efforts to the service of all civil process, assigned to him by the Warrant Officer, in compliance with the rules of procedure from time to time approved by the Sheriff.

"2. Whenever the Deputy may serve any such civil process whereby the Sheriff is entitled to the fee specified in T.C.A. 8-2133, for the service thereof, the Sheriff will pay to the Deputy, as compensation, 70% of such fees thus earned by the Sheriff and served by the Deputy, but such compensation shall not exceed $550.00 in any one month in accordance with the limitations contained in T.C.A. 8-2003 as amended. The Deputy will be paid such compensation by the Sheriff as soon after the first of each

month as the fees thus earned are determined and distributed to the Sheriff by the Circuit Court Clerk of Davidson County, Tennessee.

"3. The Deputy understands and agrees that the remaining 30% of the fees to which the Sheriff is entitled, under said statute, is needed to defray the costs of supervising the service of such process and other necessary expenses of the Sheriff's office, so that additional 'tax money' will not be required to defray the expenses of operating the Sheriff's office."

The bill further charges complainant earned $1,005.93 from the time he signed the contract until the day he resigned as a Field Deputy Sheriff and that the Sheriff had deducted and kept the sum of $331.78 out of this money.

It is then charged the contract is illegal and void as against public policy because complainant's salary is fixed by Code Section T.C.A. sec. 8-2003, which we quote:

"No deputy or deputies nor assistants shall be allowed to any office, unless the officer himself is unable to discharge the duties of the office by devoting his entire working time thereto, except field deputy sheriffs; and in case the officer is incapacitated from any cause to perform the duties of his office, one (1) person working in the place of the officer himself shall neither be considered nor paid as a deputy or assistant; except that in addition to the regular salaried deputies provided for, the Sheriff in each county may appoint all necessary field deputies for misdemeanor and criminal work, and civil work before the justices of the peace; said field deputies to be appointed as provided under secs.

8-2001 and 8-2002. The salaries of said field deputies shall not exceed five hundred fifty dollars ($550) per month, for each deputy; provided, that said field deputy sheriffs shall earn said salaries from legal fees provided by statute; and all fees so earned by said field deputy sheriffs in excess of their fixed salaries shall be paid into the office of the sheriff of their said counties, and when so paid shall be paid to the county trustee of said county as provided in sec. 8-2203.''

The bill futher charges the contract was procured by coercion and fraud.

The defendant demurred to the bill on the grounds the bill does not state a cause of action; and because the contract entered into by the parties was approved by Judges Leathers and Draper of the Criminal Court of Davidson County, and that his suit was instituted at least a year after the execution of the contract, and under which he had received and retained benefits and is, therefore, barred by laches to rescind the contract.

This demurrer was overruled by the Chancellor.

By leave of the Chancellor, the complainant filed an amendment to his bill in which he alleges the compensation of field deputy sheriffs is fixed by the Anti-Fee bill, Chapter 101, Public Acts of 1921. That a number of the field deputies had signed identical contracts with defendant; and, therefore, complainant was entitled to a declaratory judgment in behalf of himself and the other field deputies.

The prayer of the amended bill is that the contracts be declared null and void as well as the decree of the

Criminal Court ratifying them; and that all necessary references and accountings be ordered as may be required.

To the amended bill defendant filed a demurrer coupled with an answer. The grounds of the demurrer are that the complainant and other field deputies are not similarly situated; the number of field deputies are not too great for separate suits to be maintained; and there is no showing complainant has authority or permission from the other field deputies to bring this suit in their behalf.

The Chancellor sustained the demurrer in so far as complainant seeks to maintain the suit as a class action. The complainant excepted and prayed an appeal to this Court.

The answer denies the contract was secured by fraud or coercion.

The answer alleges that on January 5, 1961, complainant signed the contract after the defendant had explained to him the fees of his office for the period from September 1, 1960, at which time he took office, to January 1, 1961, failed to equal the necessary expenses of his office by $25,000.00. Therefore, it was necessary to either reduce the number of field deputies or the fees would have to be increased to meet the expenses of the office.

The answer avers the field deputies signed the contracts voluntarily and that they are not illegal or void.

Defendant further alleges that after the contracts were signed he filed a supplemental petition under authority of T.C.A. secs. 8-2001—8-2003 in the case of Leslie E. Jett, etc., v. Beverly Briley, etc., No. 12488

before Judges Leathers and Draper for the authority to appoint a number of field deputies and to have their compensation fixed. On April 5, 1961, this matter was heard and the following decree in part was entered:

"It is, accordingly, ordered, adjudged, and decreed by the Judges of this Court, that the agreement marked Exhibit 'A' to his supplemental petition, and all the provisions thereof, which has heretofore been agreed to by petitioner and certain of his Special and Field Deputies as the instrument fixing their compensation for serving Civil Court processes, is in all things and respects approved; and

"It is further ordered by the Judges of this Court that petitioner be and hereby is authorized, from the Special and/or Field Deputies approved by said prior order in this cause, to set and fix the salaries, or compensation, of twelve (12) Special Field Deputies and a number of Field Deputies, not to exceed seventy-five (75), for the service of the several Civil Court processes delivered to and served by them, at an amount of money equivalent to Seventy Percent (70%) of the fees provided by T.C.A. 8-2133 for the petitioner, as Sheriff, to demand and receive for the service thereof, but no such deputy may be paid, from such fees thus earned, more than FIVE HUNDRED FIFTY AND 00/100 ($550.00) DOLLARS in any one month because of the limiting provisions of T.C.A. 8-2003, as amended."

It is next averred the complainant accepted the benefits of the contract from January 5, 1961, until on or about December 10, 1961, at which time he resigned as field deputy; and, therefore, complainant is estopped to deny the validity of the contract.

The answer admits the complainant earned fees totaling $1,005.93 from the time he entered into the contract until such time as he resigned from his office and that defendant retained $331.78 under the terms of the contract.

The cause was tried upon oral and documentary proof pursuant to a written agreement of Counsel for the respective parties.

Complainant testified he signed the contract after Sheriff Jett had explained its terms. But he agreed to sign it because he had been a field deputy for twenty-three years and he knew if he did not sign the contract he would be kicked out and would have no employment. That he worked under the contract for about a year and learned that he could not make a living by giving up thirty per cent of his salary.

He further testified all the field deputies signed similar contracts.

He testified prior to the defendant's taking the office of Sheriff of Davidson County, the field deputies got all the fees they earned and paid all their expenses. If one earned more than the limit of $550.00, then the excess was turned over to the Sheriff's office. That prior to the signing of the contract, he had received his pay from the Clerks of the Court directly.

On cross examination he admitted Sheriff Jett had not told him he had to either sign the contract or turn in his commission.

The defendant testified he changed the policy of paying his field deputies in January, 1961, because his office was not collecting sufficient fees to meet the salaries and

expenses of the same. That in January, 1961, his office was behind some $10,000.00 and for this reason he had the field deputies to agree to the contract.

He further testified he explained the contract to complainant and complainant signed it voluntarily.

He also testified he had no surplus funds in his office due to the contracts.

The Chancellor filed a memorandum opinion in which he found there was no fraud or coercion on the part of the defendant in procuring the contract.

He further found that T.C.A. sec. 8-2003, Section 8 of Chapter 101, Public Acts of 1921, fixed the salaries of field deputy sheriffs. He further found the criminal court had no authority to fix the salaries of field deputy sheriffs, but could only authorize the number to be appointed by the Sheriff. He, therefore, held the contract null and void. A decree was entered sustaining complainant's bill and ordering a judgment for $331.78 in favor of complainant.

Both complainant and defendant have appealed to this Court and have assigned errors.

Complainant assigns as error the action of the Chancellor in sustaining defendant's demurrer to the amended bill and dismissing it in so far as it prayed for a declaratory judgment.

The defendant has filed four assignments of error.

We will consider defendant's assignments of error first.

Defendant's first and second assignments of error complain of the action of the Chancellor in decreeing the Act, itself, fixed the salaries of field deputy sheriffs

and the criminal court had no jurisdiction or discretion as to their salaries; but could only authorize the number of such deputies to be appointed by the Sheriff.

In construing Section 8 of the Anti-Fee Bill, as codified T.C.A. sec. 8-2003, we are governed by the following rules:

■ The legislative intent controls the construction of statutes. Chicago & Southern Air Lines, Inc., v. Evans, 192 Tenn. 218, 240 S.W.(2d) 249.

■ A statute should be construed as a whole, giving effect to each word. Anderson Fish and Oyster Company v. Olds, 197 Tenn. 604, 277 S.W.(2d) 344.

■ The Court in construing a statute should give it the construction which promotes the purpose and object of the Act. Woodroff v. City of Nashville, 29 Tenn.App. 426, 197 S.W.(2d) 4.

■ In ascertaining the intent and purpose of the legislature it is our duty to look to the caption of the Act. Sealed Power Corp. v. Stokes, 174 Tenn. 493, 127 S.W. (2d) 114.

When we look to the caption of the Act, Chapter 101 of the Public Acts of 1921, we see its purpose is to fix salaries of certain county officials including the sheriff of each county; to provide for the disposition of the fees of the office; and to provide for the appointment and removal of deputies and assistants to said officers; and to prescribe the manner of fixing their compensation.

Section 7 of the Act, codified as T.C.A. sec. 8-2001 and sec. 8-2002, provides, "[t]he sheriff shall in like manner make application to the judge of the circuit court in his county, for deputies and assistants, showing the neces-

sity therefor, the number required and the salary that should be paid each; provided, that, in the counties where criminal courts are established, the sheriff shall apply to a judge of such criminal court.'' The county judge of the county is named the party defendant to the petition and is required to answer the petition. Upon the hearing, the court may allow the number of deputies applied for or a less number, and may allow the salaries set out in the petition or smaller salaries, as the facts justify.

Section 8 of the Act, T.C.A. sec. 8-2003, provides the sheriff must apply to the court for the appointment of field deputy sheriffs, but need not show a necessity for their appointment. This section of the Act also provides the salaries of field deputies shall not be fixed at more than $550.00 per month, for each deputy. It also limits the amount a field deputy may be paid for a given month at the total of his earned fees, provided the fees so earned do not exceed his salary fixed by the court. Should his earned fees total more than his fixed salary, the excess becomes county revenue.

██ ██ Thus, it is clear this section of the Act is an exception to the general Act. Exceptions to general Acts are strictly construed. Powers v. Vinsant, 165 Tenn. 390, 54 S.W.(2d) 398.

Hence, we think the use of the words ''fixed salary'' refer only to salaries fixed by the Court pursuant to T.C.A. sec. 8-2001 and sec. 8-2002.

The legislature could not have adequate knowledge of the requirements of the officers in the different counties of the State of the number of deputies and assistants necessary to efficiently operate their respective offices.

Therefore, the legislature delegated to the courts the authority to determine the number of deputies and the salaries they were to receive. Hunter v. Conner, 152 Tenn. 258, 277 S.W. 71.

It was further said in Hunter v. Conner, supra, "when compensation is paid by the fee system, or on the basis of business done, it is not unusual to have a maximum sum fixed beyond which the officer is not to receive any emoluments."

█ Accordingly, we are of the opinion the Chancellor was in error in decreeing the courts have no authority to fix the salaries of field deputy sheriffs.

Defendant's first and second assignments are sustained.

Assignments three and four challenge the action of the Chancellor in decreeing the contract null and void and entering a decree for the amount sued for in favor of complainant.

But, from our view of the case, we do not reach that question. We think the Chancellor as well as the Attorneys have overlooked the real issue of the case. We think the decisive question is whether complainant is estopped to question the validity of the contract and recover the amount sued for.

█ It is the law, as held by the Chancellor, an agreement to change or fix the compensation of a public official or employee does not estop or preclude the officer or employee from recovering the difference between the salary actually received by him and that to which he was legally entitled by law. Draper v. Putnam County, 25 Tenn.App. 269, 156 S.W.(2d) 348; Carmichael v. Hamby,

188 Tenn. 182, 217 S.W.(2d) 934; Gregory v. Trousdale County, 194 Tenn. 670, 254 S.W.(2d) 753; Lane v. Sumner County, 201 Tenn. 229, 298 S.W.(2d) 708.

We think, from an examination of these cases, this rule applies to that class of officers who are elected or appointed for a fixed term and authorized to collect the fees provided by law earned by the particular office; and whose salaries are fixed by law. This rule is based upon considerations of public policy.

■ It is conceded a deputy sheriff is a public officer in this state; but his salary is paid from fees collected by the office of the sheriff under whom he serves. By Section 7 of the Anti-Fee Bill, codified as T.C.A. sec. 8-2004 and sec. 8-2005, it is provided: "The order or decree fixing the number of deputies and salaries may be changed or modified by increasing or decreasing the number of deputies and the salary paid each, from time to time, upon application made in the manner above provided; or any such officers without such formal application may decrease either the number of deputies or assistants and the salaries of any of them where the facts justify such course. It shall be the duty of all officers mentioned above to reduce the number of deputies and assistants and/or the salaries paid them when it can be reasonably done * * *."

Thus, this section of the Act gives to the Sheriff the right to dismiss such deputies or assistants or reduce the salaries of any of them when the facts justify such a course. A deputy sheriff is, therefore, not appointed for a fixed term and his salary may be decreased or increased during the time of his service.

The Sheriff testified his office expenses were some $10,000.00 more than the fees collected from September 1, 1960, to January 1, 1961; and, for this reason, he called all of his field deputies in and discussed the situation with them and they all agreed to the reduction in salary rather than a reduction in personnel.

The Chancellor found there was no coercion or duress in procuring the contracts. We concur in this finding since the proof shows the Sheriff explained to the deputies the situation of his office and the two alternatives open to them. All the field deputies signed the contract.

Complainant worked under the contract for some twelve months and accepted the reduced salary, without objection. He testified he burned his commission and then filed this suit without first protesting to the Sheriff.

As we have pointed out, our Supreme Court in many cases has held a public officer is not estopped by accepting a less salary than fixed by law, although he may have expressly agreed to such a reduction. All these cases hold such agreements are contrary to public policy. This is not true under the facts of this case because the contract is executed rather than executory.

Accordingly, we are of the opinion the case falls under the principle announced by this Court in an opinion by Honorable Luke McAmis, Presiding Judge, in the case of Steele v. City of Chattanooga, 19 Tenn.App. 192, 84 S.W.(2d) 590, in which it is said: "There is now no possibility that the public good will be in any wise affected; the service of this particular employee having been terminated. Conceding, but not deciding, that a sound public policy would forbid the enforcement of an executory contract of this nature, we are unable to see wherein any

question of public policy is involved after the service has been performed and reduced compensation paid and accepted without protest by the officer. Second Nat. Bank v. Ferguson, 114 Ky. 516, 71 S.W. 429; De Boest v. Gambell, 35 Or. 368, 58 P. 72, 353. In the latter case the court observed and applied a distinction between an executed and an executory contract to accept a reduction in salary.

"We are of opinion complainant should be repelled from a court of conscience in his attempt to gain an unconscionable advantage from an agreement to which he voluntarily assented for his own benefit and that the chancellor correctly held him estopped from recovering in this case." See Annotation in 70 A.L.R. 976, and 118 A.L.R. 1458.

Accordingly, we are of the opinion complainant is estopped to question the validity of the contract and to recover the amount withheld under the terms of the contract he voluntarily signed for his own benefit.

 As stated, Counsel overlooked assigning as error the failure of the Chancellor to consider the question of estoppel. However, the rules of this Court reserve to the Court the right to "notice an error overlooked by counsel" in their assignments of error. Rule 12 of the Court of Appeals; Life & Casualty Insurance Co. of Tenn. v. Robertson, 6 Tenn.App. 43.

Since we must reverse the decree of the Chancellor and dismiss complainant's bill, it would be useless for us to consider complainant's assignment of error, which challenges the action of the Chancellor in refusing to make a declaration as to the rights of complainant and other field deputies similarly situated.

The decree of the Chancellor is reversed and complainant's suit dismissed with costs.

Shriver and Humphreys, JJ., concur.