## SOUTHEASTERN FLEET LEASING, INC., et al. v. ROBERT R. GENTRY.—416 S.W.(2d) 773.

Eastern Section. December 17, 1966.

Certiorari Denied by Supreme Court June 5, 1967.

164

.Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, for petitioner, Southeastern Fleet Leasing, Inc., and others.

Berke & Berke, Chattanooga, for respondent, Robert R. Gentry.

McAMIS, P. J.   This is a suit to recover for personal injuries sustained by the plaintiff Robert R. Gentry as the result of an automobile colliding with a truck operated by the defendant Sammy Gentry and owned by defendant

Southeastern Fleet Leasing, Inc. in which the plaintiff and members of his family were passengers. The declaration charges negligent operation of the truck and that it was leased by Southeastern in a defective condition and without proper inspection.

Defendants have petitioned this Court to review and reverse by writs of certiorari and supersedeas the action of the Circuit Court overruling their motion to quash a subpoena duces tecum served on Miss Bessie Gorman, a court reporter, requiring her to produce for discovery purposes a written statement made by plaintiff following the accident.

The parties are residents of Hamilton County, Tennessee. On September 18, 1964, they were enroute to London, Kentucky, when the truck met and collided with an automobile north of Oneida, Tennessee. As a result of the accident plaintiff sustained serious personal injuries for which he was placed in a hospital at Oneida. His wife and two of his small children were seriously injured and his mother and an aunt lost their lives. One of the children died in the hospital on September 22, 1964, one day before the statement was taken.

In resisting the motion to quash plaintiff made and filed an affidavit which we quote in part:

"On September 23, 1964, while plaintiff was still in the hospital, and while subject to the shock of already having lost his Mother and His Son, coupled with the serious injuries sustained by himself (as set out in his Declaration) he was approached by a person whom he is now advised is an attorney representing the insurance company, and in company with Bessie Gorman, a court

stenographer, took a statement from him on said date, about 8:30 P.M.

"The events covering the statement are not entirely clear to affiant since, at the time of the taking of the statement, he was suffering from severe, painful injuries; and suffering from great emotional shock due to the loss of loved ones, and injuries to other members of his family, as above set out. Affiant would further show that at the time he made the statement he was not represented by counsel, and was not given a copy of the statement which he made. Affiant would further show that on the 4th day of October 1965, he and his wife, Purificacion Y. Gentry, each personally requested a copy of his statement. * * These requests were refused."

The motion was heard on the above affidavit and an affidavit of defendants' counsel, Honorable J. Thomas Mann, setting forth the employment of his firm by the insurer of the truck and that Mr. Warner, an associate of his firm, interviewed plaintiff and took from him a statement, taken and transcribed by Miss Gorman who was employed by the firm for that purpose. In another affidavit filed in support of a motion to reconsider the action of the Court overruling the motion to quash Mr. Mann said the statement was taken at a time when plaintiff was "not under sedation, or if * * * under any sedation it was slight and minimal and in no way interfered with (his) clarity of mind, recollection of events, or alertness and lucidity."

■ Since Mr. Mann was not present when the statement was taken his affidavit necessarily is not based upon personal knowledge. The motion is not supported by affidavits of Mr. Warner and Miss Gorman who were present. We assume the trial court found, in accord with

the affidavit of the plaintiff, that he was suffering from severe and painful injuries and was under "great emotional shock due to the loss of his loved ones" and that as a result "the events covering the statement are not entirely clear" to him at the present time. On the record we must concur in that finding.

By their petition and assignments of error defendants insist (1) the discovery statute, T.C.A. sec. 24-1201 et seq. (Ch. 54, Acts of 1959) does not authorize the compulsory production of documents and (2), in any event, the document in question is the "work product" of defendants' counsel which, under Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and other similar holdings of the Federal Courts, is not subject to discovery.

As to the first question, T.C.A. sec. 24-1204 reads:

"Scope of examination—Unless otherwise ordered by the court as provided in 24-1205, 24-1206, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether relating to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, *documents,* or other tangible things and the identity and location of persons having knowledge of relevant facts. (Acts 1959, Ch. 54, sec. 4.)" (Italics ours)

While it is true the Act does not in so many words require the physical production of "documents" it expressly authorizes the examination of witnesses regarding the existence, description and nature of such tangible evidence. It would seem odd to say that a witness could be so examined but could not be required to produce for

examination the evidence about which he is called upon to testify. We will not lightly ascribe to the Legislature such an oddity but will look to the spirit and purpose of the Act as revealed both in its caption and its body. Compare Carter v. Jett, 51 Tenn.App. 560, 370 S.W.2d 576, cited in Medic Ambulance Service, Inc. v. McAdams, 216 Tenn. 304, 392 S.W.2d 103, hereinbelow discussed.

■ That purpose is to promote the ascertainment of truth by aiding a party in preparing for trial, to prevent surprise and insure as far as possible a trial on the merits, rather than upon fortuitous and unforeseen developments at the trial. To adopt the construction urged in many cases would completely defeat the intent and purpose of the Act.

In Medic Ambulance Service, Inc. v. McAdams, supra, the plaintiff sought to compel the Railway Company to produce statements taken by its claim agent from its crew members immediately following the accident. There was no showing that a subpoena had ever been served on the agent or that the plaintiff had shown any diligence in "discovering for himself the material sought for inspection and copying." On these grounds the order of the trial judge requiring the production of the material was held not warranted. However, in the concluding portion of the opinion the Supreme Court said:

"We observe, however, this opinion does not prejudice the right of plaintiff to further pursue the matter within the bounds and limitations of the Discovery Law of 1959."

Although not directly considered in the opinion, the effect was to hold that documentary evidence on a proper showing may be discovered under the Act.

The question was discussed in Puckett v. Broome, 53 Tenn.App. 663, 385 S.W.2d 762 in a portion of the opinion written by a single member of the court wherein the view was expressed that documents are per se excluded from discovery under the Act. The majority of the Court concurred in the result of the opinion but only on the ground that discovery of the document sought would constitute an unlawful interference with the contractual rights of the insurer of one of the parties. The opinion of the majority concludes:

"Except upon this ground, we would hold the order complained of to be within the discretion of the trial court and reserve for final determination on appeal the question whether the order is erroneous as beyond the purview of the discovery statute."

Certiorari was denied by the Supreme Court September 4, 1964.

█ Statutes authorizing discovery in actions at law are remedial in nature and are to be liberally construed in favor of disclosure of non-privileged material. Greyhound Corp. v. Superior Court of Merced County, 56 Cal.2d 355, 15 Cal.Rptr. 90, 364 P.2d 266; State ex rel. Boswell v. Curtis (Mo.App.) 334 S.W.2d 757; Edgar v. Finley (CA 8 Mo.) 312 F.2d 533; 23 Am.Jur.2d 475, Depositions and Discovery, Sect. 144.

Although the courts are loathe to permit undue interference with private affairs, a party is not exempt from producing books and papers merely because they are private. Ib. Sec. 165.

█ It is not insisted the statement in the possession of Miss Gorman is privileged and we hold, under a proper construction of the statute and the peculiar facts of this

case, it is subject to discovery, notwithstanding it is a statement of the party seeking discovery.

In the absence of fraud or other unconscionable conduct, it is generally held that the inability of a party to the suit to remember the contents of the statement even when coupled with the fact that he was not represented by counsel does not make the statement discoverable. Fisher v. Glick, 47 Del. 583, 95 A.2d 464; La Maida v. Miledna Realty Corp. (1944) 182 Misc. 690, 49 N.Y.S.2d 650; McCoy v. District Court of Larimer County, 126 Colo. 32, 246 P.2d 619.

Other New York cases may be found to the same effect but later New York cases modify the rule where the party at the time of making the statement was not represented by counsel and was not furnished a copy of the statement.

To the same effect are Dowell Case, Clark v. Superior Court (1960) 177 Cal.App.2d 577, 2 Cal.Rptr. 375 (Adv. 680); Stimpert v. Abdnour, 24 Ill.2d 26, 179 N.E. 602.

■ Whatever the general rule may be with respect to the production of a party's own statement, the courts seem to agree that where at the time of making the statement the party was without counsel and was not furnished a copy of the statement and in addition was infirm, sick or suffering from shock or other disability the court may in the proper exercise of its discretion require its production under most, if not all, discovery statutes and rules. See Anno. 73 A.L.R.2d 129; 23 Am.Jur.2d 548, Depositions and Discovery, Section 193.

■ We think this a just and sound rule and as remarked by at least one court it tends to discourage a race to the hospital to interview the injured parties. And,

as remarked by a number of other courts, it would seem where a party voluntarily and as an act of grace makes a statement common courtesy requires that he be furnished a copy.

We pass then to a consideration of defendants' insistence that discovery of the statement should be denied because it is a "work product" of defendants' counsel. This term originated in Hickman v. Taylor, supra, and has since been the subject of judicial interpretation and debate in numerous Federal and State courts. Space will not permit a review of these cases in this opinion. We assume for present purposes that it can be properly so classified and on that assumption move to a consideration of the propriety of the court's action in permitting its discovery.

As above noted, in Medic Ambulance Services, Inc. v. McAdams, supra, the Supreme Court considered the right of the injured plaintiff to have discovery of statements made to the claim agent of the Railroad. The agent it appears operated under the supervision of the Company's legal department and the statements were taken in anticipation of litigation. The Court in an opinion by Mr. Justice Chattin said:

"The policy of the law in protecting against the discovery and inspection of the work product of a party extends to statements and reports made by that party's employees or agents, where made in anticipation of, or preparation for, litigation. But upon a proper showing of good cause, undue hardship or injustice, a discovery and inspection of such statements and reports may be allowed. 27 C.J.S. Discovery sec. 72, page 229, and cases cited therein. 17 Am. Jur., Discovery and Inspection, Section 28, pages 31, 32, 33 and cases there cited."

172

■ Cases from other jurisdictions both Federal and State including Hickman v. Taylor recognize that there may be circumstances justifying the compulsory production of papers which are the work product of counsel for the adversary party, though it is incumbent on the party seeking discovery to establish circumstances justifying the invasion of files of an attorney. See cases digested 73 A.L.R.2d p. 38 et seq., under Section 26 dealing with the "work product" doctrine. These cases demonstrate the correctness of the statement made in Thomas v. Trawler Red Jacket, Inc. (1954 D.C.Mass.) 16 F.R.D. 349, that:

"The prohibition of the Hickman Case is not an absolute one even as to the 'work product' of the lawyer himself."

■ We are not unaware of defendant's desire to use the statement at the trial for purposes of impeachment. But we see no reason why it can not still be used for that purpose, though probably not as effectively because a sudden confrontation on the witness stand would deprive the plaintiff of the right to study the language of the statement and refresh his recollection in the light of the statement. If the witness had given his deposition or testified in a former trial it would not be thought improper for him to read his former testimony. We can not see that a different rule should apply here. We find no abuse of discretion. Nor do we find that the judgment is illegal or in excess of the court's jurisdiction.

There was no error in the holding that the statement is subject to discovery even though it may be a "work product."

■ Defendants' final insistence is that the court erred in not permitting them to take plaintiff's discovery deposition before the examination of Miss Gorman is

allowed to proceed. We think this also was a matter addressing itself to the sound discretion of the judge.

Petition denied.

Cooper and Parrott, JJ., concur.