IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 17, 2023

## CHRIS ETTERS ET AL. v. KNOX COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 198839-1          John F. Weaver, Chancellor**

———————————————————

**No. E2022-01498-COA-R9-CV**

———————————————————

In this interlocutory appeal, the defendant municipal board claimed that a document attached to the plaintiffs' amended complaint was protected by the attorney work product doctrine and therefore could not be relied upon or otherwise utilized by the plaintiffs. The defendant further urged that such protection had not been waived. The trial court disagreed, finding that although portions of the document were protected by the work product doctrine, such protection had been waived. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

John E. Owings, Stephanie D. Coleman, and Sarah D. Jarrard, Knoxville, Tennessee, for the appellant, Knox County Retirement and Pension Board.[1]

## OPINION

This action originated with the filing of a "Complaint for Declaratory Judgment and Prospective Injunctive Relief" on September 20, 2019, in the Knox County Chancery Court ("trial court"). The plaintiffs listed in this complaint were Chris Etters, John Story, John Fugate, Shirley Smith, Wayne James, Travor Willis, Shane Reed, Robin Reed, Lloyd Peffer, Melissa Peffer, Jacob Collin Thurber, and Zachary Peter Thurber

---

[1] No appellate briefs were filed by any of the appellees: John Fugate, Chris Etters, Wayne James, Lloyd Peffer, Melissa Peffer, Robin Reed, Shane Reed, Shirley Smith, John Story, Jacob Collin Thurber, Zachary Peter Thurber, Travor Willis, or Knox County, Tennessee.

(collectively, "Plaintiffs"); the defendant was listed as Knox County, Tennessee ("Knox County"). Plaintiffs alleged that they were bringing the action on behalf of themselves and other Knox County citizens and taxpayers because Knox County was paying retirees of the Knox County Sheriff's Department a greater monetary benefit than was allowed by the voters pursuant to the Knox County Charter. Plaintiffs averred that Knox County had been including accrued leave cashout in the calculation of officers' retirement benefits, which action Plaintiffs claimed was unlawful. Plaintiffs asked the trial court to determine that Knox County's act of increasing pension benefits beyond an amount equal to 75% of the retired officers' former monthly salaries was *ultra vires* and in violation of the Knox County Charter. Plaintiffs sought injunctive and other relief.

On September 27, 2019, the Knox County Retirement and Pension Board ("the Pension Board") filed a motion to intervene as of right pursuant to Tennessee Rule of Civil Procedure 24.01. The Pension Board claimed that the Knox County Charter provided the Pension Board with complete control over the administration of the Knox County employees' retirement system, including the power to employ legal counsel. The Pension Board thus sought to intervene as a defendant in the action. Plaintiffs opposed the Pension Board's intervention.

On January 21, 2020, Knox County filed a motion to dismiss, asserting that Plaintiffs had failed to state a claim upon which relief could be granted. Knox County urged that it was not the proper entity from which the relief sought by Plaintiffs could be granted. As further bases for dismissal, Knox County relied upon the doctrine of *res judicata* as well as lack of standing. The Pension Board concomitantly filed a motion to dismiss, averring that the action was precluded by the doctrine of *res judicata*, that Plaintiffs did not have standing as "taxpayers," and that Plaintiffs sought relief that would violate the Knox County Charter and Tennessee law.

The trial court conducted a hearing on July 16, 2020, respecting the pending motions. The court entered an order on July 30, 2020, directing that Plaintiffs would have until July 31, 2020, to file a motion to amend their complaint. The court reserved ruling on the motions to dismiss until such time as it could review Plaintiffs' arguments concerning an amended complaint.

Plaintiffs filed a motion to amend on July 31, 2020, accompanied by a copy of their proposed amended complaint, which named both Knox County and the Pension Board as defendants. Plaintiffs attached various documents as exhibits to their proposed amended complaint, including a letter dated August 10, 2017 ("the Letter"), which was written by attorney William E. Mason and directed to then Knox County Law Director, Bud Armstrong. The letter addressed issues facing their mutual client, the Pension Board, in a pending lawsuit concerning the Knox County Sheriff's Department retirement system and the computation of retired officers' benefits. The letter proceeded to address

potential courses of action for the Pension Board in the matter and sets forth Mr. Mason's legal advice to the Pension Board respecting the litigation.

On August 24, 2020, the Pension Board filed a motion seeking permission from the trial court to file a motion for a protective order under seal. The Pension Board asserted that the motion concerned information that was protected by the attorney-client privilege and the attorney work product doctrine. On October 13 and 14, 2020, Knox County and the Pension Board, respectively, filed responses opposing the amendment of Plaintiffs' complaint.

On October 16, 2020, the trial court conducted a hearing and entered an agreed order stating that Plaintiffs' motion to amend and attached amended complaint and exhibits would be placed under seal "until such time as this court can address all such issues related to attorney-client privilege and work product related to the document." The Pension Board then filed, under seal, a motion for protective order. The Pension Board also asked the trial court to strike the Letter and any and all references to same from the record.

In its motion, the Pension Board asserted that the Letter contained information that was protected by the attorney-client privilege and the attorney work product doctrine inasmuch as both Attorney Mason and Attorney Armstrong had represented the Pension Board at the time the Letter was written. The Pension Board averred that it had neither waived the privilege nor authorized the attorneys to release the Letter. The Pension Board further averred that its current counsel had sent a letter to Plaintiffs' counsel on August 4, 2020, advising Plaintiffs' counsel of the privileged nature of the letter and requesting that Plaintiff's counsel immediately terminate use of the Letter and take steps to remove it from the public domain. According to the Pension Board, no response had been received from Plaintiffs' counsel. The Pension Board thus sought an *in camera* hearing, an order from the trial court directing Plaintiffs' counsel to destroy all privileged information in his possession, a protective order concerning such privileged information, and an order directing that the Letter and all references to same be stricken from the record or placed under seal.

The Pension Board subsequently filed a supplemental brief in support of its motion on September 8, 2021. In this brief, the Pension Board argued that the attorney work product doctrine was an exception to the Tennessee Public Records Act ("TPRA") such that the letter should not have been disclosed by Knox County or its law director. The Pension Board concomitantly filed a motion for contempt, asserting that Plaintiffs had filed "publicly" a brief in response to the motion to strike containing the same privileged information from the Letter despite the trial court's directive that such matters would be filed under seal. The Pension Board requested that Plaintiffs' brief be stricken and that Plaintiffs be held in contempt and sanctioned.

On September 9, 2021, the trial court conducted a closed hearing respecting the motion for protective order and to strike. On October 8, 2021, the court entered a resulting order, directing that Plaintiffs' brief filed in response to the motion be placed under seal.

On December 2, 2021, the trial court entered a "Memorandum Opinion and Order," denying the Pension Board's pending motions. The court determined that the Letter was not protected by the attorney-client privilege because such privilege only protected (1) communications from client to lawyer and (2) communications from lawyer to client containing legal advice "if the advice reveals client confidence or otherwise privileged information." The court further noted that the privilege did not extend to "communications from an attorney to a client when they contain advice solely based upon public information rather than confidential information," citing *Hazlett v. Bryant*, 241 S.W.2d 121, 124 (Tenn. 1951).

With regard to the work product doctrine, the trial court explained that the doctrine's protection is broader than attorney-client privilege and "protects materials containing the mental impressions, conclusions, opinions, and legal theories of an attorney prepared in anticipation of litigation." *See* Tenn. R. Civ. P. 26.02(3). The court also acknowledged, however, that once confidential information protected by the work product doctrine was made public, the protection would be deemed waived. Accordingly, inasmuch as the Letter and/or the opinions contained therein had been disclosed to the public in a prior lawsuit, the court determined that the work product doctrine offered no protection. The court noted that Mr. Mason's opinions expressed in the Letter had been disclosed in a complaint previously filed by the Pension Board in Knox County Circuit Court wherein Mr. Mason was named as the defendant. The court further noted that the Knox County Law Director's office had disclosed the Letter in a TPRA request. As such, the trial court denied the Pension Board's motions upon concluding that the Letter did not contain protected information.

On January 3, 2022, the Pension Board filed a motion seeking permission for an interlocutory appeal concerning the trial court's December 2, 2021 ruling. The trial court granted the motion by order entered October 13, 2022. Likewise, this Court granted permission for an interlocutory appeal on December 8, 2022.

On December 14, 2022, the trial court entered an "Order of Non-Suit," stating that Plaintiffs had voluntarily non-suited their claims against the defendants pursuant to Tennessee Rule of Civil Procedure 41. The Pension Board then filed a motion for clarification in this Court, requesting a determination of the effect of the December 14, 2022 order. This Court entered an Order on December 21, 2022, stating that inasmuch as this Court had already assumed jurisdiction over the matter and stayed all proceedings in the trial court before the December 14, 2022 order was entered, the trial court lacked jurisdiction to enter any orders after December 8, 2022. This Court therefore ruled that

- 4 -

the December 14, 2022 order was void and of no effect.  Furthermore, we instructed that if Plaintiffs wished to dismiss their claims, they must first seek this Court's permission to lift the stay on the trial court proceedings.  Plaintiffs did not do so, and this interlocutory appeal proceeded.

## II.  Issues Presented

Pursuant to Tennessee Rule of Appellate Procedure 9, "we are limited on appeal to the questions certified by the trial court in its order granting permission to seek an interlocutory appeal and in this Court's order granting the appeal."  *In re Bridgestone/Firestone & Ford Motor Co. Litig*., 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008) (citing Tenn. R. App. P. 9).  This Court directed in its order granting interlocutory appeal that the issues on appeal would be as follows:

1.  Whether Mr. Mason's August 10, 2017 letter is subject to protection under the Pension Board's claim of attorney-client privilege and/or the application of the work product doctrine.

2.  If Mr. Mason's August 10, 2017 letter is subject to protection under either of the above theories, whether the privilege has been waived.

## III.  Standard of Review

Following the grant of an application for interlocutory appeal, "the standard of review is the same standard that would have been applied to the issue(s) in an appeal as of right."  *See Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005).  As this Court has previously explained, decisions regarding the application of the attorney-client privilege and the work product doctrine "address themselves to a trial court's discretion."  *See Boyd v. Comdata Network, Inc*., 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).  Accordingly, this Court must review these decisions using the "abuse of discretion" standard of review.  *See id*.

With regard to the abuse of discretion standard of review, this Court has clarified:

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.  When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the

evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

## IV. Attorney-Client Privilege and Work Product Doctrine

The initial question certified in this Court's order granting interlocutory appeal is whether Mr. Mason's August 10, 2017 letter is subject to protection under the Pension Board's claim of attorney-client privilege and/or the application of the work product doctrine. In its appellate brief, the Pension Board asserts that the letter is protected by the work product doctrine and makes no argument concerning the applicability of attorney-client privilege.[2] Accordingly, we will confine our analysis to the work product doctrine.

As this Court has previously explained, the work product doctrine operates to protect the work produced by attorneys, "embod[ying] the policy that attorneys, doing the sort of work that attorneys do to prepare a case for trial, should not be hampered by the prospect that they might be called upon at any time to hand over the results of their work to their adversaries." *See Boyd*, 88 S.W.3d at 219. This Court has further clarified:

> The central purpose of the work product doctrine is to protect an attorney's preparation for trial under the adversary system. The policy underlying the doctrine is that lawyers preparing for litigation should be permitted to

---

[2] We note that in Tennessee, the attorney-client privilege is codified at Tennessee Code Annotated § 23-3-105 (2021), which provides:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person during the pendency of the suit, before or afterward, to the person's injury.

As the *Boyd* Court explained:

> The attorney-client privilege is not absolute, nor does it cover all communications between a client and his or her attorney. The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential. The privilege applies not only to the client's communications but also to the attorney's communications to his or her client when the attorney's communications are specifically based on the client's confidential communications or when disclosing the attorney's communications would, directly or indirectly, reveal the substance of the client's confidential communications.

*Boyd*, 88 S.W.3d at 212-13 (footnote omitted) (internal citations omitted).

assemble information, to separate the relevant facts from the irrelevant, and to use the relevant facts to plan and prepare their strategy without undue and needless interference. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 219-20 (Tenn. Ct. App. 2002). Thus, the doctrine protects parties from "learning of the adversary's mental impressions, conclusions, and legal theories of the case," *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d [681,] 689 [(Tenn. 1994)], and prevents a litigant "from taking a free ride on the research and thinking of his opponent's lawyer." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999).

While the work product doctrine is most frequently invoked in civil cases, it has a vital role in assuring the proper functioning of the criminal justice system. *United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160, 2170, 45 L. Ed. 2d 141 (1975). Thus, the work product doctrine applies to both civil and criminal proceedings, although not necessarily in the same fashion. *Coe v. State,* 17 S.W.3d 193, 214 (Tenn. 2000); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 219. The work product doctrine has now been codified in procedural rules. Tenn. R. Civ. P. 26.02(3) embodies the version of the doctrine applicable to civil proceedings.

*Swift v. Campbell*, 159 S.W.3d 565, 572-73 (Tenn. Ct. App. 2004) (applying the corresponding rule of criminal procedure in a case involving a public records request).

The civil procedural rule embodying the work product doctrine, Tennessee Rule of Civil Procedure 26.02(3), provides as follows in pertinent part:

**TRIAL PREPARATION:  MATERIALS.**  Subject to the provisions of subdivision (4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"To qualify as work product, it must be established:  '(1) that the material sought is tangible, (2) that the documents were prepared in anticipation of litigation or trial, and (3) that the documents were prepared by or for legal counsel.'" *Friedmann v. Corr. Corp. of*

- 7 -

*Am.*, No. M2012-00212-COA-R3-CV, 2013 WL 784584, at *8 (Tenn. Ct. App. Feb. 28, 2013) (quoting *The Tennessean v. Tenn. Dep't of Pers.*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at *1 (Tenn. Ct. App. Apr. 27, 2007)). *See State ex rel Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 617 n.15 (Tenn. Ct. App. 2006)).

In the case at bar, it is undisputed that the Letter was written by Mr. Mason, as counsel for the Pension Board, to Mr. Armstrong, who was Knox County Law Director at that time and who also represented the Pension Board. The letter was in regard to pending litigation concerning the same issue underlying this lawsuit—proper calculation of retired officers' pension benefits. As the trial court found:

> Laid out in the Letter were the opposing views held by Mr. Mason and Mr. Armstrong, concerning the legality of including accrued vacation leave cash out benefits, in average monthly compensation, for purposes of determining the monthly amounts of pension benefits under the Uniformed Officers Pension Plan.

Without reiterating the contents of the Letter here, there can be no question that the Letter contained Mr. Mason's legal theories and opinions concerning then-pending litigation against the Pension Board. *See Arnold v. City of Chattanooga*, 19 S.W.3d 779, 784 (Tenn. Ct. App. 1999) ("[M]aterials which are prepared in anticipation of litigation need not be prepared for the specific case in which discovery is sought in order to be protected by the work product doctrine."). Mr. Mason advises a course of action for the Pension Board in the litigation that diverges from Mr. Armstrong's recommendation. Mr. Mason also explains that his interpretation of the governing documents is his basis for this alternate opinion. Based on our review of the Letter, we conclude that it would be protected by the work product doctrine, as defined above.[3]

---

[3] We would be remiss, however, if we failed to emphasize that the language utilized in Tennessee Rule of Civil Procedure 26.02(3) and the cases interpreting same refer to "documents," "materials," and "tangible things." The Pension Board points out that although the trial court found that the work product doctrine was applicable to the Letter in its December 2021 order, the court proceeded to select certain sections of the Letter as protected by the doctrine and to delineate other sections that were not. The trial court cited no precedent for this approach. We have likewise failed to locate any authority allowing documents to be separated into parts with only particular sections treated as protected. We therefore conclude that the attorney work product protection would extend to the entire document rather than only to certain sections contained therein.

V.  Waiver of Work Product Doctrine Protection

The second question certified in this Court's order granting interlocutory appeal is whether the protection afforded to the Letter by the work product doctrine has been waived.  As this Court has previously explained:

> The protections afforded litigants by T.R.C.P. § 26.02(3) and 26.02(4) are qualified, and equitable in nature.  The privilege can be overcome upon a proper showing.  *Vythoulkas v. Vanderbilt University Hospital*, 693 S.W.2d 350 (Tenn. Ct. App. 1985) (citing *Southeastern Fleet Leasing Inc., v. Gentry*, 57 Tenn. App. 162, 416 S.W.2d 773-778 (1967).  In keeping with the equitable considerations that must be examined in applying the privilege, courts have recognized exceptions to the work product doctrine.  An example is where the attorney or client has waived the protection by voluntarily disclosing the work sought to be protected.  *See Campbell County Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 463 (Tenn. Ct. App. 1984) (holding that attorney waived work product protection by disclosing information to adversary).

> Partial waiver of work product as well as attorney/client privilege can act to waive the entire privilege.  *See*, *e.g.*, *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y.1996) (holding that where a party makes particular information a key issue, that party cannot then assert privilege as to that information); *Hartz Mountain Indus., Inc. v. Commissioner*, 93 T .C. 521, 527, 1989 WL 128568, (U.S. Tax Ct. 1989) (finding that fairness requires that selective disclosure operate as a waiver to any work product protection).

> The determination of waiver rests not on whether particular information is introduced into evidence, 'but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege.' *Granite Partners, L.P. v. Bear Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999).  The scope of the waiver by disclosure is defined by the 'fairness doctrine,' which aims to prevent the prejudice and distortion that may be caused by one party's selective disclose of otherwise protected information. *Id*. at 4.

> Courts have universally held that a party is prevented from invoking the work product doctrine immunity as both 'sword and shield'.  In *Wardleigh v. Second Judicial Dist. Ct*., 111 Nev. 345, 891 P.2d 1180 (1995), the Supreme Court of Nevada held that the doctrine of waiver was intended as a shield, not a sword.  '[W]here a party seeks an advantage in litigation by revealing part of a privileged communication, the party shall

be deemed to have waived the entire attorney-client privilege as it relates to the subject matter of that which was partially disclosed. (Citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)); *accord In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982); *S.T. Systems Corp. v. Maryland Nat. Bank*, 112 Md. App. 20, 684 A.2d 32 (1995). *Also see*, *e.g.*, *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y. 1996); *Hartz Mountain Indus. Inc. v. Commissioner*, 93 T.C. 521, 527, 1989 WL 128568 (U.S. Tax Ct. 1989). Disclosure need not be made to the party's adversary in litigation to constitute waiver. It can be made extra-judicially, as in disclosure to the public of part of the confidential material. *See Bassett v. Newton*, 658 So.2d 398 (Ala. 1995).

*Arnold*, 19 S.W.3d at 787 (footnote omitted).

The trial court determined that the protection afforded by the work product doctrine had been waived herein because (1) the information contained in the Letter had also been contained in an attachment to a motion to dismiss filed on February 25, 2018, by the Pension Board in a prior action before the trial court, and (2) the Letter previously had been disclosed to the public by the current Knox County Law Director, David Buuck, in a TPRA request.

At the September 9, 2021 hearing concerning the motion for protective order and to strike, Plaintiffs' counsel called Mr. Buuck to testify with reference to his knowledge of the Letter. Mr. Buuck stated that he was Chief Deputy Law Director for Knox County at the time the Letter was drafted and that he was familiar with it because he had participated in the prior litigation involving the pension benefit calculations. Mr. Buuck testified unequivocally that the contents of the Letter had been publicly disclosed.

According to Mr. Buuck, the Knox County Law Director's office had received a TPRA request from the Knoxville Focus newspaper concerning the documents related to the pension litigation. Mr. Buuck stated that Mr. Armstrong and he had specifically reviewed the Letter after receiving the TPRA request and had decided that the contents of the Letter were not privileged. Mr. Buuck testified that when they complied with the TPRA request, they released "[v]irtually the entire file from the prior lawsuit," including the Letter. As Mr. Buuck specifically stated, "the Focus wanted public records on everything to do with that Pension Board dismissal of that lawsuit, so we complied with the public records request as we felt we were required to do, and this [the Letter] was part of that documentation." This being the case, we agree with the trial court that the protection afforded by the work product doctrine has been waived.

In *Arnold*, this Court determined that the documents at issue were protected by the work product doctrine and were therefore not subject to disclosure pursuant to a TPRA request unless the protection had been waived. *See* 19 S.W.3d at 785-87. In concluding

that the confidentiality provided by the work product doctrine had been waived, this Court relied on the fact that information from the subject documents had been disseminated during a City Council meeting and a subsequent public forum meeting. *See id*. at 787-88; *see also Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 463 (Tenn. Ct. App. 1984) (determining that an attorney had waived work product protection by disclosing information to opposing counsel). Moreover, in *Sharp v. Tenn. Dep't of Comm. & Ins.*, No. M2016-01207-COA-R3-CV, 2017 WL 5197291, at *4 (Tenn. Ct. App. Nov. 9, 2017), this Court concluded that the protection afforded by the work product doctrine had been waived when "some of the information contained in the report" was relied upon by the governmental defendant as justification for certain actions the defendant had taken. This Court further stated that "use of the report in this manner is inconsistent with a claim of privilege." *Id*.

In the instant action, Mr. Buuck clearly stated that the Letter had been disclosed to a local newspaper as part of Knox County's response to a TPRA request. Mr. Buuck's testimony in this regard was unrefuted. Accordingly, we conclude that the protection afforded to the Letter as attorney work product has been waived. We therefore affirm the trial court's ruling concerning waiver.

We acknowledge the Pension Board's argument that Plaintiffs should not be allowed to rely on a waiver argument due to the purported "unclean hands" of Plaintiffs' counsel. *See, e.g.*, *In re Mattie L.*, 618 S.W.3d 335, 344 (Tenn. 2021) ("[H]e who comes into a court of equity, asking its interposition in his behalf, must come with clean hands."). The Pension Board urges that Plaintiffs' counsel sought to obtain the Letter from Mr. Armstrong and "should have terminated his use of the Letter" once Plaintiffs' counsel realized that the Letter contained protected work product. Having determined that the work product protection had been waived, we find the Pension Board's argument to be unavailing.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's determination that the Letter was protected by the work product doctrine. We further affirm the trial court's determination that the work product protection extending to the Letter had been waived by its voluntary disclosure. This case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed to the appellant, the Knox County Retirement and Pension Board.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE