99 N.J. Super. 283 (1968)
239 A.2d 280
WILLIAM F. DOUGHERTY, JR., AN INFANT, BY HIS GUARDIAN AD LITEM WILLIAM F. DOUGHERTY, SR., WILLIAM F. DOUGHERTY, SR., INDIVIDUALLY, AND AGNES GERLT, PLAINTIFFS,
v.
GEORGE GELLENTHIN AND RUTH GELLENTHIN, HIS WIFE, GEORGE A. GELLENTHIN AND HOWARD L. BLESSINGTON, DEFENDANTS. GEORGE A. GELLENTHIN, III, AN INFANT, BY HIS GUARDIAN AD LITEM GEORGE A. GELLENTHIN, JR.; AND GEORGE A. GELLENTHIN, JR. AND RUTH GELLENTHIN, HIS WIFE, INDIVIDUALLY, PLAINTIFFS,
v.
HOWARD L. BLESSINGTON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 26, 1968.
*284 Mr. Thomas P. Butz for plaintiffs Dougherty (Messrs. Haines, Schuman & Butz, attorneys).
Mr. Henry H. Wiley for plaintiffs Gellenthin (Messrs. Berry, Whitson & Berry, attorneys).
Mr. Robert W. O'Hagan for defendant Blessington (Messrs. Stout & O'Hagan, attorneys).
MUCCIFORI, J.C.C. (temporarily assigned).
Defendant Blessington moves before this court to obtain a true copy of the testimony taken by Peter A. Lumia, certified shorthand reporter, at the municipal court hearing held in connection with motor vehicle summonses issued as a result of the motor vehicle accident which gives rise to the instant suit.
On that occasion defendant Blessington as well as other persons, including defendant George A. Gellenthin and plaintiff William F. Dougherty, Jr., testified before the *285 court. Reporter Lumia was, on October 3, 1966, hired by the law firm of Haines, Schuman and Butz, attorneys for plaintiffs, to take the testimony at the municipal court hearing. At the express request of plaintiffs' attorney, the reporter was not sworn by the magistrate.
Subsequent to October 3, 1966 Lumia was requested to furnish a copy of the transcript to the attorneys for defendant Blessington. He did not do so, on the order of plaintiffs' attorney.
Plaintiffs Dougherty resist the application, relying on Kaplan v. Jones, 77 N.J. Super. 31 (Law Div. 1962), where the court determined that the transcript of such a municipal court hearing constituted a work product and was not the subject of discovery "unless good cause be shown."
Defendant Blessington argues that by virtue of the amendment of R.R. 8:7-5(a) on December 9, 1963, the Kaplan case is no longer controlling, and further, that in any event this court is not bound by that decision since it was rendered by a court of concurrent jurisdiction. State v. Patfol, Inc., 71 N.J. Super. 404, 407-408 (Law Div. 1961), reversed on other grounds 76 N.J. Super. 287 (App. Div. 1962), reargument denied 76 N.J. Super. 572 (App. Div. 1962). Defendant says that at the time Kaplan was decided no official transcript of the proceedings could be made unless and until the certified shorthand reporter was sworn by the magistrate, and that by virtue of the 1963 amendment, that requirement was dispensed with in cases where a certified shorthand reporter reported the proceedings. He further alludes to the November 24, 1966 issue of the New Jersey Law Journal wherein the following statement of the Administrative Director appeared:
"It has been called to the attention of the Administrative Office of the Courts that in some instances shorthand reporters engaged by a party make a record of only part of the hearing, as for example, only the State's case or only the defendant's case. Such practice is improper and it is the duty of the magistrate to see that if a record of the hearing is to be made, that the entire hearing be officially recorded *286 in accordance with Rule 8:7-5. Upon request, the reporter taking the proceedings is required to furnish any party or the magistrate with a transcript upon payment of the transcript rates set forth in N.J.S. 2A:11-15 (a). If an appeal is taken, the appellant is required to file the original transcript with the clerk of the appellate court and serve a copy on the prosecuting attorney in accordance with Rule 3:10-10 (a)."
Blessington's position is that as a result of the foregoing rule change and administrative directive, any transcript of a municipal court proceeding made by a certified shorthand reporter is now rendered an official transcript to which he would be entitled as a matter of course.
The court disagrees with these contentions. The quoted directive merely requires that if the services of a reporter are obtained, the entire proceeding must be reported. R.R. 8:7-5(a) provides that an official transcript may be had: (a) where the magistrate on his own motion, without request therefore being made by any party or other person, arranges for such a reporter or stenographer to make an official record of the proceedings, provided that the court has a fund for that purpose; or (b) at the request of any party, the magistrate shall permit an official record to be made; or (c) at the request of any person not a party, the magistrate may permit an official record to be made. It is clear that an official record may be made only in one of the three foregoing ways, none of which is present here. In fact, the magistrate was advised by plaintiffs' attorney not to swear in the certified shorthand reporter. Actually, it was unnecessary to make this request; it should never have been made and never granted since it is no longer necessary to have a reporter sworn. Plaintiffs' counsel, by remaining silent, would have secured the same result, i.e., preventing the transcript from becoming official.
The court therefore concludes that the transcript made by the certified shorthand reporter at the express request of plaintiffs' attorney is not an official transcript. The next question to be resolved is whether or not it constitutes *287 a work product of plaintiffs' attorney and is therefore privileged. Plaintiffs further contend that since defendant was represented by counsel below, he could have objected to the procedure and is therefore estopped from now complaining. The court rejects this contention for the reasons expressed below. This court disagrees with the conclusion reached in Kaplan v. Jones, supra. In resisting the application here, plaintiffs rely on the following language of R.R. 4:16-2:
"The deponent shall not be required to produce or submit for inspection any writing obtained by the adverse party, his attorney, surety, indemnitor, or agent in anticipation of litigation * * *."
This provision represents an exception to the broad and liberal intendment of the rules of discovery. Admittedly, our discovery rules, R.R. 4:16 to 4:28, are to be given their broadest possible latitude. Interchemical Corp. v. Uncas Printing & Fin. Co., Inc., 39 N.J. Super. 318, 325 (App. Div. 1956); Myers v. St. Francis Hospital, 91 N.J. Super. 377, 385 (App. Div. 1966). The genius of these rules, as stated by former Chief Justice Vanderbilt, is:
"* * * to insure that the outcome of litigation in this State shall depend on its merits in the light of all of the available facts, rather than on the craftiness of the parties or the guile of their counsel." Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951).
Thus, the restriction against discovering work product is violative of the basic concept of our rules on discovery. It is therefore to be construed very narrowly. Cf. In re Selser, 15 N.J. 393, 405-406 (1954), where Chief Justice Vanderbilt, speaking for a unanimous court, said that "the privilege [attorney-client] is not absolute, but rather an exception to a more fundamental policy. It is therefore to be strictly limited. * * *" See 8 Wigmore, Evidence (McNaughton rev. 1961), § 2290, p. 554.
*288 It is in the light of that restriction that the concept of work product should be considered. The competing values were properly put by Mr. Justice Murphy:
"It is not without reason that various safeguards have been established to preclude unwarranted excursions into the privacy of a man's work. At the same time, public policy supports reasonable and necessary inquiries. Properly to balance these competing interests is a delicate and difficult task." Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 387, 91 L.Ed. 451 (1947) (emphasis added).
Our highest court has thus offered privacy as a reason for the work product exception. This rationale is to be found elsewhere. In Frank C. Sparks Company v. Huber Baking Co., 10 Terry 267, 49 Del. 267, 114 A.2d 657 (Sup. Ct. 1955), the court said:
"* * * an attorney's work product is exempt from discovery * * * upon the theory that the private files of an attorney should be preserved from invasion by opposing counsel." (10 Terry, at 269, 49 Del., at p. 269, 114 A.2d, at p. 658.)
If privacy is an end of this doctrine, certainly the corollary would follow that when that privacy no longer exists, neither should the work product privilege. As stated by Judge Hartshorne:
"* * * since the purpose of this work product privilege is to protect the legal craftsman in the product of his labors, this privilege would continue till the confidential nature of such work product is destroyed by public use as in court. * * *" Thompson v. Hoitsma, D.C., 19 F.R.D. 112, 114-115 (1956).
This dichotomy between privacy and public use is well to note in the case at bar. Here the transcript is an accurate accounting of what transpired in open court. By refusing discovery plaintiffs seek to make that private which was public in its inception. Cf. Cederlund v. Hub Loan Co., 88 N.J. Super. 238 (App. Div. 1965), where a claimant in a bankruptcy matter, appealing a receiver's disallowance of his claim, sought to discover the testimony taken before the *289 receiver. The court noted the quasi-judicial nature of the receiver's hearing, the importance and relevancy of the testimony, and the liberal spirit of R.R. 4:16-2. These factors are similarly present here. In Cederlund the court summarily dismissed the work product argument.
In McGill v. Illinois Power Co., 18 Ill.2d 242, 163 N.E.2d 454 (Sup. Ct. 1959), plaintiff sued defendant power company and two of its employees for injuries sustained from coming in contact with allegedly improperly insulated wires. Plaintiff had earlier filed a workmen's compensation claim for which he took the depositions of the employee-defendants. The power company then sought to secure a copy of those depositions. Despite claims of work product, discovery was allowed. The Illinois court's opinion illustrates another aspect of the work product exception:
"The documents with which we are concerned are depositions taken pursuant to law. They are the product of the power of the State to compel the testimony of witnesses rather than of the ingenuity or resourcefulness of any lawyer." (18 Ill.2d, at p. 246, 163 N.E.2d, at p. 457.)
Here, too, plaintiffs did not compel the witnesses to appear. The testimony given was in no way a product of counsel's investigation or resourcefulness. Stenzler v. Wigton-Abbott Corp., 11 N.J. Super. 600 (Law Div. 1951), allowed discovery of a model of a scaffold that caused plaintiff's injuries. The model was built from defendant's plan by defendant. The court there inferred that work product is an "invention of the mind" or "something new in one's mind." The transcript here does not come within the purview of that concept.
In addition to these considerations of privacy, public use and resourcefulness of counsel, there is the overriding consideration of fundamental fairness. No doubt, with this in mind, Chief Justice Vanderbilt was to say:
"Litigation is no longer to be thought of as a battle of wits, or a trial as a sporting event conducted for the benefit of the spectators." Rutgers L. Rev. (November 1948, Special Number, p. 69)
*290 "The presentation of the truth to the court is paramount; it must proceed unimpeded and unhampered * * *" Bead Chain Mfg. Co., v. Smith 1 N.J. 118, 120-121 (1948)
The problem presented here is one which counsel concede arises frequently in the everyday practice of law. Customarily, the parties at such municipal hearings are vying for position in connection with forthcoming civil litigation, and in pursuit thereof one party or the other (and sometimes both) engages the services of a certified shorthand reporter to record the testimony in the hope of thereby securing some advantage in the forthcoming civil litigation.
The court concludes that the mere engaging of a certified shorthand reporter to record proceedings before a municipal court does not constitute a "work product." The hearing is a solemn judicial public proceeding, and to permit either party to reserve unto himself that which transpired below and thereby effectively foreclose his adversary from the same would be manifestly unjust.
An order will be submitted providing that plaintiff deliver to defendant within ten days hereof a written authorization addressed to the certified shorthand reporter, authorizing delivery of the transcript to defendant, the cost of which shall be borne by defendant in accordance with N.J.S. 2A: 11-15(a).