GERALD WHEELER, by Mother and Next Friend, Nettie Wheeler, Plaintiff-Appellee, v. SARA CAIN and HOWARD CAIN, Defendants-Appellants.

DAN WHEELER and NETTIE WHEELER, Plaintiffs-Appellees, v. SARA CAIN and HOWARD CAIN, Defendants-Appellants. —459 S.W.2d 618.

Western Section. February 4, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

128

Leo Bearman, Jr., Leo Bearman, Sr., Memphis, for defendants-appellants.

Max D. Lucas, Jr., J. W. Kirkpatrick, Kirkpatrick & Lucas, Memphis, for plaintiffs-appellees.

CARNEY, P.J. (W.S.). The two cases were tried together below before the Trial Judge sitting without a jury. The Trial Judge awarded the minor plaintiff, Gerald Wheeler, age 17, compensatory damages of $25,000 and punitive damages of $2,500. He awarded the parents, Dan and Nettie Wheeler, $1,200 for loss of services, medical expenses, etc. On motions for new trials the Trial Judge remitted his verdict from $25,000 to $20,000 for compensatory damages and overruled all other grounds of the motions for new trials.

The defendants, Sara Cain and Howard Cain, have appealed from the judgments against them. The plaintiff, Gerald Wheeler, by mother and next friend, Nettie Wheeler, has appealed from the action of the Trial Judge in granting the remittitur of $5,000.

The plaintiff, Gerald Wheeler, was severely injured on the night of July 14, 1967, when he was struck by an automobile at the corner of Josephine and Carnes Streets in Memphis, Tennessee. The defendant, Mrs. Sara Cain, was employed as a hostess for Continental Bread Company. On the afternoon of July 13, 1967, she attended a food show for Malone & Hyde Wholesale Grocers at the Chisca Hotel. During the afternoon and evening of July

13, 1967, Mrs. Cain had several drinks of vodka and orange juice.

About 11:00 or 11:30 P.M. Mrs. Cain left the Chisca Hotel and started home driving her automobile. She admitted being in the area of Carnes and Josephine Streets but denied having struck the plaintiff, Wheeler, with her car. At the time he was struck, Gerald Wheeler, in the company of several friends, was standing near a bicycle trying to get the kickstand tightened. An automobile struck Gerald demolishing the bicycle and knocking him some 15 to 20 feet into the air. The driver of the car slowed down, looked back and then drove on. The intersection was fairly well lighted.

Eye witnesses identified the driver of the automobile as a white woman traveling alone in a light colored automobile probably a Pontiac. A motorist, Naosba Richmond, accompanied by Cynthia Huey, was in the vicinity, heard the crash, and saw a white automobile in or near the intersection. Richmond followed the automobile to the next intersection of Josephine and Spottswood Streets where Richmond and his companion got a good look at the license number of the white automobile. Richmond gave the number to the police; an alarm was given over the police radio to be on the lookout for a hit-and-run driver describing a white 1966 Pontiac, license number BH-9423.

A police squad car arrived at the scene of the accident at 12:25 A.M. July 14. The officers talked to motorist Richmond and discussed with him the license number of the hit-and-run car. It was determined that there had been some error in the reporting by some policeman as to the license number on the automobile. Sometime be-

tween 12:00 and 12:30 A.M., July 14, the witness Norman and his wife were driving north on Prescott between Lamar and Park Streets in the area of the intersection of Josephine and Carnes when they saw a Pontiac automobile driven by a white woman run a stop sign and turn left on Prescott Street forcing the Norman automobile to stop to avoid being hit.

The Normans then watched the driver of the white Pontiac automobile in their rear view mirror and saw her strike a utility pole some two blocks away. Norman started back to help but the Pontiac pulled off and kept going north on Prescott toward Park Avenue. The witness Norman followed the white Pontiac for one or more blocks and then turned in to a Krystal Hamburger place and advised Patrolmen Fitzgerald and Rich sitting in squad car 40 that the white Pontiac had hit a utility pole. Officers Fitzgerald and Rich in the squad car then caught up with the white Pontiac, checked the license number of the Ponitac with the license number they had heard over the police radio. They identified the automobile as the hit-and-run car which had struck Wheeler. They stopped the automobile, arrested the defendant, Mrs. Sara Cain. They observed a blank stare on her face and an odor of an intoxicant.

Mrs. Cain told officers that she did not remember hitting the utility pole on Prescott and did not remember hitting the boy on the bicycle. At 12:15 A.M. Officer Fitzgerald called the dispatcher at the police station reporting that the white Pontiac No. BH-9423 had been stopped. After further interrogation at the scene after being shown the scene and the damaged portion of the Pontiac automobile, Mrs. Cain admitted that she remembered hitting the pole but did not recall striking anything else.

Assignments of error I and II are to the effect that the judgment of the lower Court is against the weight and preponderance of the evidence and is also legally erroneous. In support of these two assignments of error the solicitor for appellant, Mrs. Sara Cain, very forcefully points out numerous discrepancies in the testimony of plaintiffs' witnesses. He calls attention to an erroneous report by one of the persons living in the neighborhood that the hit-and-run driver was driving a beige Ford automobile and that on one occasion one witness described the number of the hit-and-run vehicle as being BH-9432 instead of BH-9423.

In our opinion the preponderance of the evidence supports the finding of the Trial Judge that Mrs. Cain was the driver of the automobile which struck the plaintiff Wheeler. She had been drinking during the afternoon; she was driving an automobile with a number similar to that identified by the witnesses of the area; she struck a telephone pole and kept driving; she denied having struck the telephone pole; she offered no reasonable explanation for being off her course on the way home. In spite of the numerous discrepancies mentioned by solicitor for appellant, we hold that the Trial Judge reached the correct conclusion in finding that the defendant was the driver of the hit-and-run automobile. Therefore, assignments of error I and II are overruled. We find no merit in the appellant's insistence that the plaintiff himself was guilty of proximate contributory negligence.

Assignment of error No. X is to the effect that the Trial Judge erred in not allowing Attorney Ross Houpt to testify that his client, Mrs. Cain, intended to and instructed him to plead her guilty to an indictment for leaving the scene of the accident involving a utility pole

but not to an indictment for leaving the scene of the accident involving the plaintiff, Gerald Wheeler. The minutes of the Criminal Court of Shelby County, Tennessee, Division V, were introduced to show that the defendant, Mrs. Sara Cain, had been indicted by the grand jury of Shelby County on charges of reckless driving and also on charges of failing to stop her automobile to see if an accident resulted in injuries to Gerald Wheeler and in failing to render assistance to the said Gerald Wheeler. Indictments were returned July 28, 1967. On Friday, December 1, 1967, the defendant, Mrs. Sara Cain, through her attorney, Mr. Houpt, entered a plea of guilty to both indictments.

Mrs. Cain testified that she was not present in Criminal Court on the day the guilty plea was entered but was, in fact, recovering from an operation and that it was her intention to plead guilty to leaving the scene of the accident involving the utility pole but under no circumstances did she intend to plead guilty to leaving the scene of an accident involving Gerald Wheeler since she had denied being involved in that accident and that she had instructed her attorney to act in that regard for her. Mr. Houpt was presented as a witness for the defendant, Mrs. Cain. He testified that he had represented Mrs. Cain in a hearing before the City Judge in which several of the witnesses who were witnesses in the Circuit Court case had also testified; that the witness, Naosba Richmond, had testified in City Court that he could not identify Mrs. Cain as the driver of the automobile and that none of the other witnesses had been able to identify her as the driver of the automobile.

With reference to the plea of guilty which he had entered for Mrs. Cain in the Criminal Court, Mr. Houpt

was in the process of explaining how he was acting under power of attorney from Mrs. Cain to enter a plea of guilty and that he had worked out an agreement with the Assistant Attorney General. An objection was interposed by attorney for the plaintiffs. Mr. Bearman, attorney for defendant, stated to the Court that he hoped to be able to prove by Mr. Houpt that the plea of guilty which was entered was intended to be a plea of guilty to leaving the scene of an accident with the utility pole and that there had never been any intention of pleading guilty to leaving the scene of an accident in which Gerald Wheeler was hurt.

We copy the following from the record:

"A. At the time her case came on to be heard in Criminal Court, Mrs. Cain had had an operation. I prepared a power of attorney to permit me to act in her place and stead, and entered into an agreement with Mr. Clyde Mason, Assistant to the Attorney General, Phil M. Canale, to enter a plea of guilty—

MR. KIRKPATRICK: (Interposing) I don't believe that this is proper as to how and why he worked out this trade with the Attorney General.

THE COURT: Mr. Bearman?

MR. BEARMAN: Your Honor, I want Mr. Houpt to testify if he can, with respect to what Mrs. Sara Cain was supposed to be pleading guilty to.

THE COURT: I think he can read the indictment and tell what she was pleading guilty to, can't he not?

MR. BEARMAN: We don't have a jury, so may I just state to the Court what I want to prove? We don't

have a jury, and as your Honor has done throughout the trial, you can put aside what is improper. It is my position, and we intend to prove, through Mr. Houpt, that the plea of guilty entered was intended to be a plea of guilty to leaving the scene of the accident with the utility pole, and that there has never been any intention of pleading guilty to leaving the scene of an accident in which Gerald Wheeler was hurt.

THE COURT: Is Mr. Houpt prepared to testify to that? Is that what he did in this case?

MR. BEARMAN: I think we are going to have to see.

THE COURT: You had better make sure Mr. Houpt wants to testify to that, Mr. Bearman, before you let him do so.

MR. BEARMAN: I am putting Mr. Houpt in the middle and I don't want to do that. On the other hand, I have my client to represent and—

THE COURT: (Interposing) I will sustain the objection to that. Move on to something else.

MR. BEARMAN: That is all I have.

THE COURT: Anything further from this witness?

MR. KIRKPATRICK: No questions, your Honor.''

■ The record implies that Mr. Houpt would testify that Mrs. Cain did not intend to plead guilty to leaving the scene of an accident involving Gerald Wheeler. However, the record does not affirmatively show this. No effort was made to enter into this record what Mr. Houpt would have testified in answer to such a question. Therefore, it does not affirmatively appear that the error of the Trial Judge in excluding the testimony of Mr. Houpt affected

the result of the trial below. At most it would have been only cumulative to the testimony of Mrs. Cain herself. Therefore, assignment of error No. X is respectfully overruled. T.C.A. Section 27-117.

Assignment of error No. VI is to the effect that the Trial Court erred in limiting the defense counsel's cross-examination of Gerald Wheeler to Wheeler's familiarity with the bicycle and in not allowing cross-examination to attempt to show Gerald Wheeler himself stole the bicycle. The plaintiff, Wheeler, had testified that he had left home during the night of July 13 to go to the store to get some food and passed some of his friends. Wheeler said he saw a bicycle over in the yard of Johnny Payne which did not belong to either Payne or Wheeler and rode it down the street toward the store. On cross-examination he admitted that the bicycle he was riding was not his and that he had never seen it before and that he had no permission from anyone to take the bicycle.

Plaintiff stated that none of the boys present had any objections to his using the bicycle. The Trial Court refused to permit attorney for defendant Cain to interrogate the plaintiff, Wheeler, as to whether or not the bicycle was stolen, but only permitted him to interrogate about the bicycle to show that the plaintiff, Wheeler, was negligent, in the manner in which he was operating the bicycle or trying to fix the kick stand. He was permitted to prove by cross-examination that the bicycle did not have a light on it. Defendant's attorney insists that in addition to being able to show that the plaintiff was unfamiliar with the bicycle, the defendant was also entitled to interrogate the plaintiff about the ownership of the bicycle to test the credibility of the plaintiff and as an aid in questioning whether or not the plaintiff was exercising

due care for his own safety at the time of the accident. In our opinion the defendant was entitled to ask the plaintiff if he was, in fact, riding the bicycle at the time of his injuries and if he, Wheeler, knew the bicycle had been stolen at the time of his accident to test his credibility as a witness. Lackey v. Metropolitan Life Ins. Co., 26 Tenn. App. 564, 174 S.W.2d 575. Since the plaintiff did testify on cross-examination that the bicycle was not his, that he had never seen it before and that he had no permission from the owner to ride the bicycle and since the manner in which the plaintiff was injured is not substantially in dispute, we hold that it was harmless error for His Honor the Trial Judge to refuse further cross-examination by the defendant of the plaintiff, Wheeler, relative to the title to the bicycle. T.C.A. Section 27-117.

■ Assignment of error No. VIII is to the effect that the Trial Judge erred in permitting Officer B. B. Hughes to testify concerning the call received by the police department dispatcher's office regarding the vehicle involved in the accident with the plaintiff. Officer Hughes is the radio dispatcher who was on duty for the Memphis Police Force on the night of July 13, 1967, and the early morning of July 14, 1967. He testified that a record is made of all calls received at the police department from people reporting accidents and the movement of squad cars, etc. These records are made on a tape and also on IBM cards in the regular course of business of the police force. Officer Hughes testified that at 12:15 A.M. he received a report of an accident at Carnes and Josephine and that the person calling him stated that the car which had left the scene of the accident was a brown over beige Ford; that a call went out to squad cars after which the dispatcher's office received a call from squad car No. 16

which had arrived on the scene at 12:21; officers in car No. 16 reported to Hughes that they had received information that the license number of the hit-and-run automobile was BH-9423, a white 1966 Pontiac with a female driver who had proceeded north on Josephine Street; that Officer Hughes as dispatcher immediately gave car 16 the information that the registration on the car was H. Cain, living at 1475 Maxine, a 1966 Pontiac 4-door sedan. In our opinion this evidence was competent under the authority of T.C.A. Section 24-712, the Uniform Business Records as Evidence Act. See also Gamble v. State, 215 Tenn. 26, 383 S.W.2d 48. Therefore, the assignment of error is respectfully overruled.

Assignment of error No. VII complains that His Honor the Trial Judge erred in not requiring the plaintiff's attorney to furnish to defendant a transcript of the verbatim account of the sworn testimony made in City Court in the case of City of Memphis v. Sara Cain after defendants had laid a proper predicate for impeachment of plaintiffs' witnesses who had previously testified there and further proved that the Court Reporter's shorthand notes were no longer available to be written up or read. Upon the trial in Memphis City Court, the plaintiff, Wheeler, was represented by counsel and paid the stenographer to take in shorthand the testimony given in City Court. The defendant, Mrs. Cain, was represented by counsel and he did not offer to pay any part of the expenses of taking down the testimony. The transcript of the testimony was made by the stenographer and delivered to attorney for plaintiff, Gerald Wheeler.

The shorthand reporter, Mrs. Ware, testified in open court that her notes were no longer legible to her and that she did not have any other copy of the transcript

in her possession having delivered the only copy to plaintiffs' attorney, Mr. Lucas. The defendant sought the production of the transcript of the City Court trial then in the hands of plaintiffs' attorney, Mr. Lucas, for the purpose of impeaching some of the plaintiffs' witnesses by showing contradictory statements between their testimony in Circuit Court and their testimony previously made in the City Court. The defendants' attorney concedes quite candidly that there are no Tennessee cases in point. Mrs. Ware, the stenographer, testified that on April 22, 1968, she was requested by a Mr. Hadaway, whom she assumed to be representing the defendants' insurance company, to furnish him a copy of the transcript; that she refused to prepare the same upon the instructions of Mr. Lucas, attorney for plaintiffs, because Mr. Lucas had paid all of her fee at the time of the hearing.

Attorney for appellant, Sara Cain, cites and relies upon the cases of Muder v. Bentley (1968), 109 N.H. 71, 242 A.2d 396; Dougherty v. Gellenthin, (1968), 99 N.J. Super. 283, 239 A.2d 280. These two cases held that the stenographic transcript of a public trial was not the work product of the attorney who hired the stenographer to take the testimony. The attorney for plaintiffs-appellees, Wheeler, cites a subsequent case of Kaplan v. Jones, 77 N.J.Super. 31, 185 A.2d 248, which reached a conclusion contrary to the case of Doughtery v. Gellenthin cited by the appellant.

In Southeastern Fleet Leasing Co. v. Gentry, 57 Tenn. App. 162, 416 S.W.2d 773, the Court of Appeals held that a court reporter's statement by the opposing party is the work product of the lawyer obtaining it, citing the case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385,

91 L.Ed. 451. However, the court held that the plaintiff was entitled to discover the statement made because at the time the statement was taken, plaintiff was still in the hospital, his mother and son had been killed in the accident, and plaintiff had no lawyer.

Plaintiff cites and relies upon the cases of Puckett v. Broome, 53 Tenn.App. 663, 385 S.W.2d 762, and Medic Ambulance Service, Inc. v. McAdams, 216 Tenn. 304, 392 S.W.2d 103. In our opinion the Trial Judge, under the authority of Medic Ambulance Service, Inc. v. McAdams, would have had jurisdiction, in his discretion, to have required the production of the transcript upon a showing that it was necessary to a proper defense of the defendants' case and upon the further showing that attorneys for the defendants had used due diligence to obtain the transcript. Neither is shown in the record below. The Trial Judge stated that even if the transcript had been produced and the testimony of the two witnesses had been impeached, his decision in favor of the plaintiffs would have been the same. Accordingly, we cannot hold His Honor the Trial Judge in error in denying the request for the discovery of the transcript upon the trial below. Assignment of error No. VII is respectfully overruled.

█ Assignment of error No. IX complains that the Trial Court erred in allowing the witness, Evelyn Freeman, to read any of the medical records of John Gaston Hospital in Memphis, Tennessee. In our opinion this evidence was competent under the authority of T.C.A. Section 24-712 (Business Records Act). The assignment of error is respectfully overruled.

As a result of the accident Gerald Wheeler sustained a compound first degree comminuted transverse fracture of

the femur in his right leg and a puncture wound in the back of his right mid-thigh where the bone came through which was swollen and bleeding and some of the muscle protruding from the wound. He was confined in the hospital from July 14 until August 22, 1967, during which time he was taken to the operating room and a cast put on his leg. He was sent home two days later where he remained in bed in a cast until November 17, 1967, when he was taken to the hospital for examination and permitted to try walking with crutches. He was discharged on December 15, 1967.

There was medical testimony in favor of the plaintiff that Wheeler had lost 75% of the strength of the muscle in the posterior thigh and 75% of the power to flex his knee. There was some atrophy in the thigh musculature and approximately ¾ inch shortening of the leg. On May 28, 1968, before the trial Wheeler was taken to Campbell's Clinic in Memphis, Tennessee for examination by an orthopedic surgeon, Dr. Sage, who testified that he found considerable damages to the major muscles of the right thigh; Wheeler had a slight limp and a one inch shortening of his leg; and that Wheeler had suffered a loss of 15% use of his leg.

Wheeler testified that he had tried caddying at the Colonial Country Club but could only handle one bag rather than two he had carried before the accident and that he could only caddy for eighteen holes rather than the 36 holes he had caddied before the accident; and that during the latter part of August, 1968, he had worked in construction work operating a concrete mixer which was easy, light work but that using tongs he could only carry ten bricks and could not work on a scaffold or do the work which he had formerly done in a pool room

standing up most of the time. He returned to high school for his senior year in the fall of 1968 after having lost a year in school because of the injuries.

██ Assignment of error No. V insists that the size of the verdict indicated passion and caprice on the part of the trier of fact who was, of course, the Trial Judge. We find no merit in this assignment of error and it is respectfully overruled.

In support of assignments of error III and IV to the effect that the verdict is excessive and against the weight and preponderance of the evidence, attorney for the appellants cites and reviews many of the cases from the appellate courts of Tennessee in which verdicts for personal injuries have been approved and discusses the injuries sustained by the plaintiffs in those several cases. Defendants' attorney very forcefully points out that in a number of those cases plaintiffs received much less damages for injuries more severe than the ones sustained by the plaintiff, Wheeler, in the present case. As this Court said in the case of Southern Railway Co. v. Sloan, 56 Tenn.App. 380, 407 S.W.2d 205, "Each case must depend upon its own facts and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is patently excessive."

In the case of Clinchfield Railroad Co. v. Forbes, 57 Tenn.App. 174, 417 S.W.2d 210, this Court said as follows:

"As bearing on this question, it is proper to take into consideration plaintiff's age, and in like manner, attention may be brought to his health, character, capac-

ity, ability to work, intelligence, skill, talents, experience, training, and industry. In addition, it is proper to consider plaintiff's habits, and other personal qualities. Other matters to be considered are plaintiff's surroundings, record of employment, and station in life, his expectancy of life, his occupation, business or profession, the effect of the injury thereon, the value of his services, avenues of occupation open to him, and the physical capacity of Plaintiff to perform his work at the time he was injured and thereafter.''

█ Admittedly, the damages awarded the plaintiff, Wheeler, are high but we cannot say that the judgment as remitted and rendered by the Trial Judge is so excessive that it should be further remitted by this Court. Accordingly, assignments of error III and IV are respectfully overruled.

Assignment of error No. XI insists that the Trial Court erred in finding as a fact that he (the plaintiff) missed a year in school as a result of the accident. Gerald Wheeler testified that after he got able to walk on crutches he tried to get back into Melrose school but was unable to do so. The evidence does not preponderate against the finding of the Trial Judge that the accident did, in fact, keep Gerald Wheeler out of school for the school year. Therefore, assignment of error No. XI is respectfully overruled. T.C.A. Section 27-303.

█ Assignment of error No. XII insists that the Trial Judge erred in permitting Dr. Mitchell to testify concerning the reasonableness of the plaintiff's bill from John Gaston Hospital in the amount of $1,078.15. Dr. Mitchell testified that he was on the staff of several hospitals in Memphis, Tennessee. We are of opinion that he

was competent to testify as to the reasonableness of the charges made for hospital services by John Gaston. Therefore, the assignment of error is therefore overruled.

## PLAINTIFFS' ASSIGNMENTS OF ERROR

Plaintiff, Gerald Wheeler, and Dan and Nettie Wheeler have filed four assignments of error which we copy as follows:

"I. The Court erred in failing to award Gerald W. Wheeler more than $25,000.00 compensatory damages and in reducing the award to $20,000.00.

"I. The Court erred in failing to award Gerald Wheeler more than $2500.00 punitive damages.

"III. The Court erred in failing to award Dan Wheeler and Nettie Wheeler more than $1200.00 compensatory damages for medical expenses and for loss of services of their son.

"IV. The Court erred in failing to award Dan Wheeler and Nettie Wheeler any punitive damages."

In our opinion the evidence does not preponderate against the finding of His Honor the Trial Judge and the plaintiffs' assignments of error I, II, III, and IV are respectfully overruled. Hammonds v. Mansfield, 41 Tenn. App. 515, 296 S.W.2d 652 (1955).

All assignments of error having been overruled, the judgment of the lower Court is in all things affirmed and the defendants, Sara Cain and Howard Cain, are taxed with the costs in the Court below and on this appeal.

Matherne and Taylor, JJ., concur.