Dean ARNOLD d/b/a, The Chattanooga
Fax and Tennessee American Water
Company, Petitioners–Appellees,

v.

CITY OF CHATTANOOGA, Tennessee,
and Mayor Jon Kinsey, Respondents–
Appellants.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Nov. 22, 1999.

Permission to Appeal Denied By
Supreme Court June 19, 2000.

Joe A. Conner and Misty Smith Kelley, Baker Donelson, Chattanooga, for Petitioner–Appellee, Tennessee American Water Company.

J. Christopher Clem, Chattanooga, for Appellee, Dean Arnold, d/b/a The Chattanooga Fax.

Randall L. Nelson, City Attorney, Chattanooga, and Frederick L. Hitchcock, Larry L. Cash, and Stephen D. Barham, Strang, Fletcher, Carriger, Walker, Chattanooga, for Appellants.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Janet M. Kleinfelter, Senior Counsel, Nashville, for Response of Attorney General to Appellants' Constitutional Challenge.

## OPINION

FRANKS, J.

In this action to inspect documents in the possession of the defendants, the Trial Judge ordered defendants to 'permit the inspection and reproduction of the full volume report prepared by Decosimo's Management Consultants, and the written report of the Public Finance Administration. Defendants obtained a stay of the Trial Court's judgment, and appealed the matter to this Court.

Jon Kimsey is the Mayor ('Mayor') of the City of Chattanooga ('City'). During the summer of 1998, the Mayor met with several officials of the Tennessee American Water Company ('Tennessee–American'), after which the Mayor decided that it would be in the City's best interest for the privately owned water company to be municipally owned.

Chattanooga City Attorney, Randall Nelson, retained special counsel Frederick Hitchcock to advise the City concerning matters related to the City's acquisition of the assets of the Tennessee American. Hitchcock retained the firm of Decosimo Management Consulting, L.L.P. ('Decosimo'), to undertake certain analyses and provide answers to certain questions concerning matters relevant to the acquisition of Tennessee–American through negotiations, or an eminent domain action. The Mayor and his advisors wanted to determine the feasibility of acquiring the water company and to help 'determine whether or not they wanted to go forward.'

Decosimo prepared a preliminary draft of its report (the 'Decosimo Report') in September 1998, addressed to Hitchcock. The report consisted of one volume of analysis and responses to questions of Hitchcock and the City Attorney, and three additional volumes containing the financial data upon which the Decosimo firm relied. Public Financial Management, Inc. ('PFM') had an existing contract with the City to provide financial assistance. PFM provided the City with a report ('the PFM Report'), which addressed questions presented by the City Attorney regarding the acquisition of Tennessee–American.

On November 24, 1998, the Mayor announced to the Public Works Committee of the Chattanooga City Council his position that the City of Chattanooga should acquire the assets of the Tennessee–American Water Company. Joseph Decosimo 'the only senior partner' of Decosimo, joined the Mayor in the presentation. The Mayor presented a handout entitled 'Gaining Ownership and Control of Our Water Resources.' The handout stated that Decosimo and PFM had completed studies supporting the feasibility of acquiring the assets of Tennessee–American indicating that 'the City can finance this purchase by

the utility's cash flow.' The handout also stated that 'any estimates of Fair Market Value must be kept confidential until an agreement is reached.' Charts and graphs were included in these handouts. The source of the charts and graphs included in these handouts was indicated to be 'Decosimo Management Consulting.'

On January 13, 1999, plaintiff Dean Arnold d/b/a/ The Chattanooga Fax filed a Petition against the City of Chattanooga and its Mayor asking for inspection and copying under the Public Records Act of the report produced by Decosimo Management Consulting. On January 25, 1999, the Tennessee–American Water Company filed its petition for access to the Decosimo report and the report of Public Financial Management. The Trial Court then consolidated the two cases on January 29, 1999.

On January 22, 1999, the City filed a Rule 24.04, Tenn.R.Civ.P., notice and served the Attorney General and Reporter of the State of Tennessee, contending that the Public Records Act was unconstitutional as violating Article II, Sections 1 and 2 of the Tennessee Constitution if the Act was construed to require production of the City Attorney's work product. The Attorney General filed a response which essentially stated that the Tennessee Rules of Civil Procedure constituted an exception to the Public records Act, and therefore the constitutional issue need not be reached. In this regard, we found it unnecessary to reach the constitutional issue.

On April 6, 1999, a hearing was held in which all parties presented evidence through depositions and argument. Following this hearing, the Court pursuant to

T.C.A. § 10–7–505(b) requested and received the Decosimo Report and the PFM Report under seal and reviewed the documents.

On April 28, 1999, the Trial Court entered a Memorandum Opinion and Order, which held that the reports were not protected and ordered their release. Further, the Court stated that the City and Mayor had knowingly and willfully violated the Public records Act, and allowed Plaintiff Arnold to recover a portion of his attorney's fees.

In order to determine whether the Chancery Court was correct in determining the two reports were subject to disclosure under the Public Records Act, it is necessary to first determine whether the reports were work products protected against discovery under Rule 26–02(3) or (4) of the Tennessee Rules of Civil Procedure or the common law work product doctrine. If the reports are not protected by the work product doctrine, or if that protection was waived, then the reports are subject to disclosure under the Public Records Act, as they fall under no other protections.

■■■ This Court's review of the Chancery Court's findings of fact is *de novo* which findings are 'accompanied by a presumption of correctness of findings, unless the preponderance of the evidence is otherwise'. T.R.A.P. Rule 13(d). Questions of law are reviewed *de novo* with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn.1997).

In *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947),[1] the United State Supreme Court held that memoran-

---

1. The United States Supreme Court discussed the *Hickman* holding in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) at page 2170, where the Court said:

At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyse and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

da, written and oral statements, and mental impressions of an attorney gained in the process of preparing for a lawsuit, were shielded by the public policy against permitting unwarranted inquiries into the files and mental impressions of an attorney.

■ In general, the work product doctrine protects certain documents and papers of an attorney prepared by the attorney, or some other person in his behalf, in anticipation of litigation or in preparation for trial. *See Vythoulkas v. Vanderbilt University Hospital,* 693 S.W.2d 350 (Tenn. Ct. App.1985); 27 C.J.S. *Discovery* § 83(a) (1999). This work product doctrine extends to reports or investigations made by, or on behalf of a party, where such documents have been prepared in anticipation of litigation or in preparation for trial. *See Downing v. Bowater,* 846 S.W.2d 265 (Tenn. Ct. App.1992); 27 C.J.S. *Discovery* § 83(a) (1999).

Rule 26.02 of the Tennessee rules of Civil Procedure codifies the work product doctrine, and provides in pertinent part:

(3) **TRIAL PREPARATION: MATERIALS.** Subject to the provision of subdivision (4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discover has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. . . .

(4) **TRIAL PREPARATION: EXPERTS.** Discover of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

. . . .

(B) A party may not discover the identity of, facts known by, or opinions held by an expert who has been consulted by another party in anticipation of litigation or preparation for trial and who is not to be called as a witness at trial except as provided in Rule 35 .02 or upon a showing that the party seeking discovery cannot obtain facts or opinions on the same subject by other means.

■ The City insists that the Decosimo and PFM Reports were documents prepared in anticipation of litigation and thus exempt from discovery, except for a showing of substantial need, pursuant to Rule 26.02(3). The city further argues that those who prepared the reports were experts who were consulted in anticipation of litigation or preparation for trial and are not to be called to testify, and as such, their opinions cannot be discovered under Rule 26.02(4).

■ The Trial Judge found the reports would not be protected under Rule 26.02 for the following reasons. First, the Chancellor stated that 'this is not a 'normal' lawsuit between adversarial parties . . . [a]t least not initially,' since it was Dean Arnold who wanted to obtain the records for publication, and it was not until later that Tennessee American joined the suit for access to the records. But the identity of the person requesting the document does not impact whether the document is an attorney work product.

■ Second, the Trial Judge states that the reports were not prepared to be used 'in this lawsuit (Public Records Act) to defeat the rights of the Petitioners.'

However, materials which are prepared in anticipation of litigation need not be prepared for the specific case in which discovery is sought in order to be protected by the work product doctrine. *See Downing v. Bowater,* 846 S.W.2d 265 (Tenn. Ct. App.1992). Third, the Trial Judge stated that the witnesses (Decosimo, Adams and Mosby) testified that they were not told they were being hired as experts in anticipation of litigation. However, what the parties were told is not completely dispositive. Whether an expert was consulted in anticipation of litigation must be determined from the intent of the party and its attorneys. The Mayor specifically stated in his deposition that at the time the experts were consulted, he was anticipating an eminent domain action. He testified:

> It was clear to me that in order for the City to acquire the water company we would have to initiate a condemnation action and I asked [special counsel] Rick [Hitchcock] to make sure that we could follow through on that on the ability to acquire the Company through eminent domain.

Both City Attorney Randall Nelson and Special Counsel Frederick Hitchcock swore in their affidavits that they contacted Decosimo and PFM in anticipation of litigation with the Water Company.

■ Fourth, the Trial Judge noted that 'no lawsuit has been filed by the City of Chattanooga to acquire the assets of TAWC by eminent domain. A condemnation lawsuit may or may not be filed. A 'possible' filing at some unknown time should not be sufficient to defeat the public's right to know under state law.' However, the test is not whether litigation has begun. *See* 23 AM.JUR. 2d *Depositions and Discovery* § 53 (1983); *Arney v. Geo. A Hormel & Co.,* 53 F.R.D. 179 (D.C.Minn.). The fact that document may have been created before complaint was actually filed does not exempt it from scope of work product doctrine. Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document is to aid in possible future litigation. *See Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582* (S.D.Tex.1996).

The evidence supports the conclusion that litigation was anticipated in the near future, and that such litigation was considered likely.

■ The alternative to filing a condemnation action was for the City to acquire the water company through a negotiation. This possibility of avoiding litigation would not render the document any less 'work product' created in anticipation of litigation than if the suit had already been filed. An attorney and client should not be disadvantaged simply because they were hoping to settle a case without filing a suit.

Next, the Trial Judge stated that the respondents' arguments failed because 'the documents being sought are not the work product of the City's attorneys. The main 'records' are reports prepared by third parties who are neither attorneys nor employees of the City.' The fact that the documents were created by a third party is irrelevant if the other criteria for work product are met. Rule 26.02(3) states that coming within the scope of attorney work product are documents 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including attorney, consultant, surety, indemnitor, insurer, or agent).' (Emphasis added.) Tennessee Courts have consistently held that reports prepared by experts for an attorney in preparation for trial are included as part of that attorney's work product. *Downing v. Bowater,* 846 S.W.2d 265 (Tenn.Ct.App. 1992); *Vythoulkas v. Vanderbilt University Hospital,* 693 S.W.2d 350 (Tenn. Ct. App.1985).

The Decosimo and PFM Reports clearly meet the requirements of Rule 26.02(3) as being 'documents ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative' as well as fulfilling the

requirements of the doctrine at Common Law. The Trial Court was in error in failing to find that the reports fell under the protection of attorney work product.

While the Trial Judge concluded the documents did not constitute work product, he nevertheless held that issue was not material to the decision, and found that the documents were public records, subject to inspection under the Public Records Act, whether or not those documents were work product.

Tennessee Code Annotated § 10–7–503(a) (1999) provides that:

All state, county and municipal records ... shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right to any citizen, unless otherwise provided by state law.

Subsection (b) of that statute provides a few enumerated exceptions. T.C.A. § 10–7–504 further specifies certain confidential records that are not subject to public inspection. Among the listed exceptions is one for the work product of the Attorney General and Reporter or any attorney working under the Attorney General and Reporter's control. There is no express exception listed in § 10–7–503 or § 10–7–504 for the work product of a municipal attorney.

The Public Records Act creates a presumption of openness as to government documents. The final clause of T.C.A. § 10–7–503(a) stating that documents are available to public inspection 'unless otherwise provided by state law' qualifies this presumption by creating a general exception for any document which another state law designates as protected or privileged. *Ballard v. Herzke*, 924 S.W.2d 652, 662 (Tenn.1996); *Appman v. Worthington*, 746 S.W.2d 165, 167 (Tenn.1987).

In *Ballard v. Herzke*, the Supreme Court held that the Rules of Civil Procedure are state law which can except documents from the Public Records Act.

Tenn Code Ann. § 10–7–503(a) provides that governmental records shall be subject to public access, 'unless otherwise provided by State law.' In *Appman v. Worthington*, 746 S.W.2d 165 (Tenn. 1987), we held that the Public Records Act does not authorize public inspection of documents in a criminal case that are exempt from discovery by Rule 16, Tennessee Rules of Criminal Procedure. We reasoned that the Rules of Criminal Procedure are the law of this State, and therefore, are encompassed within the phrase, 'unless otherwise provided by State law.' Accordingly, we concluded that materials exempt from discovery by the rules of criminal procedure are not subject to inspection under the Tennessee Public Records Act.

The same reasoning applies in this case. The Rules of Civil Procedure are the 'law' of this state. *Tennessee Department of Human Services v. Vaughn*, 595 S.W.2d 62 (Tenn.1980). The protective order therefore was entered pursuant to 'State law.' Accordingly, documents sealed by the protective order are not subject to inspection under the Tennessee Public Records Act.

*Ballard*, 924 S.W.2d at 662.

*Ballard* dealt with the specific issue of the disclosure of documents under protective order, an issue that the plaintiffs contend is distinguishable from the current case. Both *Ballard* and *Appman* make clear that the courts will find exceptions to the Public Records Act apart from those specifically set forth therein. Specifically, the Court will look to the Rules of Civil Procedure and the Common Law for such exceptions.

Plaintiffs argue that because the Rules are not absolute, 'but instead are adversarial tools that often are abrogated due to countervailing concerns, the trial court rightly held that they did not create independent exceptions to the Public Records Act.' However, this is contrary to the holding in *Ballard* that found exceptions to the

Public Records Act within the Rules of Civil Procedure.

■ Moreover, Tennessee law provides that provisions published in Tennessee Code Annotated will not supersede the Rules of Civil Procedure. T.C.A. § 16–3–406 states that once the Rules of Civil Procedure have become effective, 'all laws in conflict therewith shall be of no further force or effect.' Any conflict between provisions of the Rules of Civil Procedure and provisions of the Tennessee Code which cannot be harmoniously construed shàll be resolved in favor of the Rules of Civil Procedure. *Mid South Pavers, Inc. v. Arnco Constr. Inc.*, 771 S.W.2d 420 (Tenn. Ct. App.1989).

The Trial Judge relied heavily on the case of *Memphis Publishing Co. v. City of Memphis*, 871 S.W.2d 681 (Tenn.1994) in holding that work product documents, as products of municipal attorneys, are not exempt from disclosure.[2] In *Memphis Publishing*, the Supreme Court did point out that the Public Records Act did not expressly exempt the work product of municipal and county attorneys, but the issue of whether the work product would be excluded from disclosure, was not relevant to the disposition of that case. Moreover, the Supreme Court in that case, recognized that requiring disclosure of an attorney's work product would prevent the attorney from fulfilling his ethical duties to a client.

> If the client were aware that its secrets, embodied in its attorney's internal memoranda or other documents, were subject to public scrutiny, it would limit the client's willingness to speak openly with the attorney, and would therefore adversely affect the attorney's ability to represent his client. . . .
>
> We emphasize, however, that any attempt to discover material in the possession of a governmental attorney that

actually constitutes work product will be unsuccessful for the above-mentioned reasons.

*Id.* at 689.

The Public Records Act is to be broadly construed so as to give the fullest possible public access to public records. T.C.A. § 10–7–505(d). Yet, that Act creates exception for any documents made privileged or protected from disclosure by other state law. Just as important as public access to government records, is the right of a client to effective assistance of counsel. Canon 4 of the Code of Professional Responsibility, mandates that an attorney not betray the confidences of his client. The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand. Moreover, if the client were aware that its secrets, embodied in the attorney's internal memorandum or other document, would all be subject to public scrutiny, it would limit the client's willingness to speak openly with his or her attorney, and would consequently affect the attorney's ability to represent his or her client.

■ We hold, on the authority of *Ballard*, (decided subsequently to *Memphis Publishing Co.*), which specifically deals with exceptions to the Public Records Act, created by the Rules of Civil Procedure, that an attorney's work product is protected from discovery under the Public Records Act.

The issue thus becomes whether the actions of the defendants have waived the confidentiality of these reports.

Plaintiffs argue that if the claimed privileges and protections applied, that confidentiality had been waived by references to the report at a meeting before the City

---

**2.** 'Whether papers or documents are private or public is immaterial in determining whether or not they are privileged, with respect to discovery, and this is so as to papers of public

officials, and as to suits involving government entities, as well as persons.'

27 C.J.S. *Discovery,* § 82 at p. 158.

Council and in a town meeting held by the Mayor and Council.

■ The protections afforded litigants by T.R.C.P. § 26.02(3) and 26.02(4) are qualified, and equitable in nature. The privilege can be overcome upon a proper showing. *Vythoulkas v. Vanderbilt University Hospital*, 693 S.W.2d 350 (Tenn. Ct. App.1985) (citing *Southeastern Fleet Leasing Inc., v. Gentry*, 57 Tenn.App. 162, 416 S.W.2d 773–778 (1967). In keeping with the equitable considerations that must be examined in applying the privilege, courts have recognized exceptions to the work product doctrine. An example is where the attorney or client has waived the protection by voluntarily disclosing the work sought to be protected. *See Campbell County Bd. of Educ. v. Brownlee–Kesterson, Inc.*, 677 S.W.2d 457, 463 (Tenn. Ct. App.1984) (holding that attorney waived work product protection by disclosing information to adversary).

■ Partial waiver of work product as well as attorney/client privilege can act to waive the entire privilege. *See, e.g., In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y.1996) (holding that where a party makes particular information a key issue, that party cannot then assert privilege as to that information); *Hartz Mountain Indus., Inc. v. Commissioner*, 93 T.C. 521, 527, 1989 WL 128568, (U.S.Tax Ct.1989) (finding that fairness requires that selective disclosure operate as a waiver to any work product protection).

■ The determination of waiver rests not on whether particular information is introduced into evidence, 'but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege.' *Granite Partners, L.P. v. Bear Stearns & Co.*, 184 F.R.D. 49 (S.D.N.Y. 1999). The scope of the waiver by disclosure is defined by the 'fairness doctrine,' which aims to prevent the prejudice and

distortion that may be caused by one party's selective disclose of otherwise protected information. *Id.* at 4.

■ Courts have universally held that a party is prevented from invoking the work product doctrine immunity as both 'sword and shield'.[3] In *Wardleigh v. Second Judicial Dist. Ct.*, 111 Nev. 345, 891 P.2d 1180 (1995), the Supreme Court of Nevada held that the doctrine of waiver was intended as a shield, not a sword. '[W]here a party seeks an advantage in litigation by revealing part of a privileged communication, the party shall be deemed to have waived the entire attorney-client privilege as it relates to the subject matter of that which was partially disclosed. (Citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982)); *accord In re Sealed Case*, 676 F.2d 793, 818 (D.C.Cir.1982); *S.T. Systems Corp. v. Maryland Nat. Bank*, 112 Md.App. 20, 684 A.2d 32 (1995). *Also see, e.g., In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 473 (S.D.N.Y.1996); *Hartz Mountain Indus. Inc. v. Commissioner*, 93 T.C. 521, 527, 1989 WL 128568 (U.S.Tax Ct.1989). Disclosure need not be made to the party's adversary in litigation to constitute waiver. It can be made extra-judicially, as in disclosure to the public of part of the confidential material. *See Bassett v. Newton*, 658 So.2d 398 (Ala. 1995).

■ On November 24, 1998, the Mayor and Joseph Decosimo appeared before the City Council and made a joint presentation. Decosimo produced and distributed a report at the meeting which stated:

> Decosimo Management Consulting and the City's financial advisors, Public Financial Management, have completed studies supporting the financial feasibility of acquiring these assets.

Additionally, several graphs and charts were presented at the meeting that stated

---

**3.** The work product may not be used as an 'offensive weapon' *Kadel Back v. Amaral,* 107 CAL Rep. 20 (1973).

their source to be 'Decosimo Management Consulting, 1998.'

On January 21, 1999, the Mayor held a public forum at the Tivoli Theatre. Both he and Joseph Decosimo made presentations that were videotaped and transcribed. Decosimo proceeded to tell the public of the first meeting with the City's attorneys that had been held in strict confidence.

> I want to tell you how I became associated with this acquisition. Independent Counsel Rick Hitchcock approached our firm and asked us if we would do a feasibility study of the Tennessee–American Water Company and to review all of the financial statistics that are-that are available, and those would include 10ks and 10Qs that are filed with the Security and Exchange Commission by the American Waterworks Company, the parent company of the Tennessee American Water Company ...
>
> I would like to now review some of our slides that will kind of bring to light some of the information that we have gleaned.

Until the time of these meetings, the public had never heard of these reports, which has been kept secret. The implication from Joseph Decosimo's presentations at both meetings was that his company had produced a feasibility study that supported the Mayor's decision to take over the water company. The material distributed at those meetings, gave the impression that Decosimo was the source of the information used during the presentations, and that the presentation stemmed from the confidential report.

Joseph Decosimo stated in his deposition that 'none of the information' that was included in the material distributed at the meetings 'came from the Decosimo Report.' He explained that he was 'told specifically by Mr. Hitchcock that none of the information in the confidential Decosimo Report was to be used in the preparation of those charts.' However, neither Decosimo nor the Mayor made this clarification known to the public at either meeting.

■ Joseph Decosimo made a strong able argument at the public meeting in support of the 'financial feasibility' of acquiring the water company. He used specific and compelling data and statistical research in support of that position. By stating that this report existed and its findings supported the feasibility of the acquisition, the City has, in effect, selectively used the reports in a public relations offensive to convince the City Council and the general public that the acquisition was both economically feasible and beneficial. By making this report a focal point at the two public meetings, the City has, in effect, waived its right to claim the work product privilege. The City has used these reports as a sword in aid of acquiring the water company, and the authorities hold, a party may not use a work product to publicly further its cause offensively as a sword, and then assert the benefit of privilege as a shield.

Accordingly, we hold that the City has waived the confidentiality of these documents.

■ Finally, T.C.A. § 10–7–505(g) provides for attorney's fees under the Public Records Act.

> If the Court finds that the governmental entity, or agent thereof, refusing to disclose the record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees against the non-disclosing governmental entity.

In this case, the reports were protected under the work product doctrine until the City's actions waived their confidentiality.

The Tennessee Supreme Court has held that T.C.A. § 10–7–505(g) 'is by its terms, a limited award provision'. *Memphis Publishing Co. v. City of Memphis,* 871 S.W.2d 681, at 689, (*citing Abernathy v. Whitley,* 838 S.W.2d 211 (Tenn. Ct. App.1992). In *Memphis Publishing,* the Court reversed the lower court and found that certain documents were public records and must be disclosed under the Public Records Act,

however, the Court refused to assess costs on the City:

> [t]he question of whether these deposition transcripts constituted 'records' under the Act is by no means a straightforward or simple one, the fact that we have come to different conclusions than did the Court of Appeals, serves to underscore the difficulty of the issue and evidences the divergence of opinion engendered by the issue. Given this fact, we cannot say that the City and County knew that the deposition transcripts were public at the time of the newspaper's demand and yet willfully refused to disclose them, for this would impute to the City and County a duty to foretell an uncertain judicial future.

*Id.* at 689.

Two unreported cases state that statutory language requiring knowing and willful refusal to disclose is akin to requiring the showing of 'bad faith'. In *Contemporary Media, Inc., v. City of Memphis,* 1999 WL 292264 (Tenn. Ct. App.1999), the Court stated that '[n]ot every refusal to disclose a public record is wrongful. The statute expresses a 'knowing and willful' standard which is synonymous with 'bad faith." *See also Capital Case Resource Ctr. Of Tennessee, Inc. v. Woodall,* 1992 WL 12217 (Tenn. Ct. App.1992). 'Bad faith' is defined as

> [t]he opposite of 'good faith', generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Contemporary Media* (citing Black's Law Dictionary 127 (5th Ed.1979)).

We have concluded that the City's position that these documents were work product is correct, but through the defendant's actions the privilege was waived. The record does not support a finding that the City knew these documents were public record and that it willfully refused to disclose them. As the *Memphis Publishing* Court observed, we will not impute to the City 'a duty to foretell an uncertain judicial future'.

Where the Trial Judge reaches the correct result for the wrong reason we will affirm. *Pearson v. Garrett Financial Services, Inc.,* 849 S.W.2d 776, 780 (Tenn. Ct. App.1992). We affirm the Trial Court's judgment that the disputed documents must be made available for inspection and copying by plaintiffs. We reverse the Trial Court on the award of attorney's fees and remand for further proceedings consistent with this Opinion.

We assess the cost of appeal one-half to the appellants and one-half to the appellees.

SUSANO and SWINEY, JJ., concur.