



FILED
Oct 08, 2021
09:10 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Lynnese Philalom | ) | Docket No. 2020-05-0763 |
| | ) | |
| v. | ) | State File No. 109377-2019 |
| | ) | |
| State Farm Mutual Automobile Ins. Co., et al. | ) ) | |
| | ) | |
| Appeal from the Court of Workers' Compensation Claims | ) ) | Heard September 28, 2021 via Microsoft Teams |
| Robert V. Durham, Judge | ) | |

---

### Affirmed and Remanded

---

This interlocutory appeal arises from a discovery dispute concerning certain communications between the employer's attorney and the nurse case manager assigned to the employee's claim by a third-party administrator. The trial court issued an order instructing the employer to respond to the employee's discovery requests and provide a copy of the nurse case manager's records to the employee, and the employer has appealed. We affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Pele I. Godkin joined.

A. Allen Grant, Nashville, Tennessee, for the employer-appellant, State Farm Mutual Automobile Ins. Co.

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellee, Lynnese Philalom

### Factual and Procedural Background

Lynnese Philalom ("Employee") works for State Farm Mutual Automobile Insurance Co. ("Employer") as a claims specialist. On November 4, 2019, while working within the course and scope of her employment, Employee tripped and fell onto her left side. As a result of the fall, she reported multiple symptoms involving her left ankle, left knee, and lower back as well as a mental injury. She has received authorized medical care with multiple physicians and other medical providers.[1]

---

[1] The nature and extent of Employee's work-related injuries are not at issue in this appeal.

1

Employer's workers' compensation insurer, Agri General Insurance Co., retained a third-party administrator, Sedgwick Claims Management Services ("Sedgwick"), to administer Employer's workers' compensation claims. With respect to Employee's claim, Sedgwick assigned a nurse case manager, Christy Spurlock, RN, who is also a Sedgwick employee, to assist in the medical case management of the claim as described in Tennessee Code Annotated section 50-6-123 (2020).[2]

During the course of discovery, Employee submitted written discovery requests to Employer, including requests for production of documents. Employer objected to some of the requests, which resulted in several motions to compel discovery filed by Employee. In her third motion to compel, Employee asserted that Employer had failed to adequately respond to request for production number 14, which reads as follows:

> Please provide a copy of all correspondence, emails and communications whatsoever between you and the employee, healthcare providers, case managers, utilization review, expert witnesses, Tennessee Department of Labor or any other persons concerning the employee and/or any matters arising out of the accident forming the basis of this action. If you contend that any such document is privileged, please provide a privilege log concerning the same.

In a "second supplemental request," Employee acknowledged having received some documents responsive to the original request but asserted entitlement to "all correspondence, emails and communications whatsoever between you and the employee . . . as well as between you and any of the other above-mentioned persons, including . . . Christy Spurlock, RN case manager."

Employee also submitted a request for production of documents identified as "RFPD #15," which sought "a copy of the case management file concerning [Employee] to include, but not limited to, all reports, assignment instructions, initial evaluation and plan; file notes; all communications with . . . attorneys whether this information be kept in the case management file or elsewhere." In the alternative, Employee requested a privilege log describing any documents responsive to this request that Employer asserted were protected from discovery.

In its written response, Employer asserted, in pertinent part, that "Employer's communications with both Christy Spurlock and counsel included are protected by attorney-client privilege *due to Ms. Spurlock being a Sedgwick employee*." (Emphasis added.) In a subsequent brief, Employer contended that "Employer's attorney's

---

[2] Tennessee's Workers' Compensation Law authorizes an employer to establish "its own program of case management that meets the guidelines promulgated by the administrator in rules." Tenn. Code Ann. § 50-6-123(e). The rules governing medical case management are contained in Tenn. Comp. R. & Regs 0800-02-07 (2017).

communications with Christy Spurlock, NCM are protected by the attorney-client privilege because, even if Christy Spurlock is a third party, she is an 'insider' that does not break the privilege." Employer further argued that "Employer's attorney's communications with Christy Spurlock, NCM are protected by the work product doctrine because the communications contain the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Following a hearing on Employee's motion to compel discovery, the trial court issued an order in which it determined that none of the nurse case manager's notes are protected by either the attorney-client privilege or the attorney work product doctrine. It ordered Employer to provide copies of all such notes to Employee. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). A trial court's decisions regarding pre-trial discovery are reviewed under an abuse-of-discretion standard. *See, e.g., Bellsouth Telecoms. v. Howard*, No. M2019-00788-WC-R3-WC, 2013 Tenn. LEXIS 343, at *7 (Tenn. Workers' Comp. Panel Apr. 11, 2013). The interpretation and application of statutes and rules are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

## Analysis

In its notice of appeal, Employer asserted the trial court erred in finding that "Counsel for Employer's communications with the [nurse case manager] are not protected by the attorney-client privilege or work product doctrine in light of the [nurse case manager's] status as an agent of Employer" or her status as "an actual employee of Employer." In a subsequent brief, Employer characterized itself, its workers' compensation insurer, and the third-party administrator, Sedgwick, as "collectively 'Employer.'" It asserted that although Sedgwick is not a "formal party" to the litigation such that it could be sued directly by Employee, Sedgwick is "part and parcel of the joint 'client' of the undersigned Counsel" and that Sedgwick employees are "also the 'client' of undersigned counsel." Hence, in Employer's view, the nurse case manager assigned to assist Employee in the medical case management of the claim is a "joint client" of Employer's counsel because she is employed by Sedgwick, which is the third-party administrator of Agri General Insurance Company, which is the insurer of Employer.

3

*Common Interest Doctrine*

In support of its position, Employer cites the "common interest doctrine," which it asserts protects communications between Employer, its counsel, and a nurse case manager employed by a third-party administrator. In *Gibson v. Richardson*, No. W2002-03027-COA-R7-CV, 2003 Tenn. App. LEXIS 43 (Tenn. Ct. App. Jan. 17, 2003), the Tennessee Court of Appeals addressed the applicability of the "common interest doctrine" in a personal injury lawsuit. In *Gibson*, two defendants asserted that certain communications between the defendants and their attorneys for the purpose of coordinating a joint legal strategy were protected by the attorney-client privilege under the "common interest doctrine." In analyzing this issue, the Court of Appeals noted a four-part test:

> A *party* asserting that certain communications are protected by the common interest doctrine must show:
>
> (1) that the otherwise privileged information was disclosed due to actual or anticipated litigation,
>
> (2) that the disclosure was made for the purpose of furthering a common interest in the actual or anticipated litigation,
>
> (3) that the disclosure was made in a manner not inconsistent with maintaining its confidentiality against adverse parties, and
>
> (4) that the person disclosing the information has not otherwise waived its [sic] attorney-client privilege for the disclosed information.

*Id.* at *13-14 (emphasis added) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 214 (Tenn. Ct. App. 2002) (The doctrine "permits *the participants in a joint defense* to communicate among themselves and with their attorneys on matters of common legal interest for the purpose of coordinating their joint legal strategy.") (Emphasis added.)).

We conclude the "common interest doctrine" is inapplicable in this case for several reasons. First, as acknowledged by Employer, neither Sedgwick nor the nurse case manager is a party to this cause of action, and neither is subject to any potential liability in this case. Tennessee Code Annotated section 50-6-102(13) defines the term "employer" to "include the employer's insurer." It does not, however, expressly include a third-party administrator or the employees of a third-party administrator within the definition of the term "employer." Thus, Employer's attempt to include Sedgwick and its employees within the umbrella term "joint client" is unsupported by statutory or case law. Second, counsel for employer is not seeking to establish a "joint legal strategy" between Employer and Sedgwick or the nurse case manager because neither Sedgwick nor the nurse case manager is a defendant in this litigation that needs a "joint legal strategy." Third, the regulations

authorizing an employer to establish a case management program make clear that a nurse case manager is to provide case management services for the benefit of the employee while also seeking to control medical costs. *See* Tenn. Code Ann. § 50-6-122(a)(1); Tenn. Comp. R. & Regs. 0800-02-07-.01(3). A nurse case manager is expressly prohibited from participating in the investigation of a claim, any compensability determinations, any medical causation assessments, or any impairment rating assessments. Tenn. Comp. R. & Regs. 0800-02-07-.04(2) (2017). A nurse case manager cannot coordinate or participate in any surveillance activities of the employee, and he or she is also prohibited from "refus[ing] to provide case management reports to parties to the claim." Tenn. Comp. R. & Regs. 0800-02-07-.04(2)(i)-(j).

In short, the "common interest doctrine" was developed to "widen[] the circle of persons to whom clients may disclose privileged communications," but that circle is limited to "participants in a joint defense" who have "common legal interest[s]" in coordinating a "joint legal strategy." *Boyd*, 88 S.W.3d at 214. In the context of this workers' compensation litigation, we conclude the nurse case manager is beyond the reach of the "common interest doctrine."

*Attorney-Client Privilege*

Employer also asserts that any communication between Employer and its counsel that includes the nurse case manager is protected by the attorney-client privilege. Employer relies, in part, on the law of agency. In discussing the attorney-client privilege, Employer notes that it was developed to "encourage full and frank communications between attorneys and their clients." We agree. However, the application of this privilege in the context of this case hinges on a finding that the nurse case manager, as an employee of a third-party administrator hired by Employer's workers' compensation insurer is, in effect, an agent of Employer. Moreover, Employer relies heavily on the intent of "legislative and administrative bodies" that promulgated the laws and regulations governing the workers' compensation system. In Employer's view, these entities "had both confidentiality and privilege" in mind at the time of drafting.

The purposes and intent of the case management system was discussed by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Seiber v. Methodist Med. Ctr.*, No. 03S01-9801-CV-00006, 1999 Tenn. LEXIS 205 (Tenn. Workers' Comp. Panel Mar. 25, 1999). In that case, the Appeals Panel noted the intent expressed by the legislature:

> It is the intent of the general assembly that quality medical care services shall be available to injured and disabled employees. It is also the legislative intent to control increasing medical costs in workers' compensation matters by establishing cost control mechanisms to ensure cost-effective delivery of

5

medical care services by employing a program of medical case management and a program to review the utilization and quality of medical care services.

*Id.* at *7 (quoting Tenn. Code Ann. § 50-6-122(a)(1)). Thus, the statutory and regulatory elements of nurse case management evidence a dual purpose: to assist injured workers in obtaining quality medical services and to help control medical costs. The language noted by the Appeals Panel in *Seiber* discussing legislative intent remains in the statute today. The Panel in *Seiber* further explained that, at that time, the Commissioner of Labor was authorized to establish a case management system that would:

(1)　Develop a treatment plan to provide appropriate medical care services to an injured or disabled employee;

(2)　Systematically monitor the treatment rendered and the medical progress of the injured or disabled employee;

(3)　Assess whether alternate medical care services are appropriate and delivered in a cost-effective manner based on acceptable medical standards;

(4)　Ensure that the injured or disabled employee is following the prescribed medical care plan; and

(5)　Formulate a plan for return to work with due regard for the employee's recovery and restrictions and limitations, if any.

*Id.* at *7-8 (quoting Tenn. Code Ann. § 50-6-123(b) (1996)). That language no longer appears in the statute but is included in Tenn. Comp. R. & Regs. 0800-02-07-.04 along with other provisions addressing the duties and obligations of nurse case managers.

Contrary to Employer's position, we find nothing in the stated legislative intent of statutory and regulatory provisions relating to nurse case management to suggest the legislature intended nurse case managers to act as agents of employers. In fact, as noted above, the regulations governing nurse case management explicitly prohibit nurse case managers from participating in compensability determinations, medical causation findings, negotiations, investigations, "or any other non-rehabilitative activity." Tenn. Comp. R. & Regs. 0800-02-07-.04(2). Thus, unlike an adjuster or claims specialist, whose express purpose is to act as an agent of an employer in administering and adjusting claims, the nurse case manager is expressly prohibited from engaging in any "non-rehabilitative" activity.

In support of its position, Employer cites the Tennessee Supreme Court's decision in *Dialysis Clinic, Inc. v. Medley*, 567 S.W.3d 314 (Tenn. 2019). In *Medley*, the Court

6

considered whether communications between a litigant's attorney and a third party could be protected from discovery. *Id.* at 316. In analyzing this issue, the Court noted a three part-test for determining whether such communications are protected from discovery: (1) whether the third party is the "functional equivalent" of the party's employee; (2) whether the communications relate to the subject matter of legal counsel's representation of the party; and (3) whether the communications were made with the intention that they would be kept confidential. *Id.* Additionally, in determining whether the third party is the "functional equivalent" of an employee of legal counsel's client, the Court instructed trial courts to consider the following "non-exclusive" factors:

> [W]hether the nonemployee performs a specific role on behalf of the entity; whether the nonemployee acts as a representative of the entity in interactions with other people or other entities; whether, as a result of performing its role, the nonemployee possesses information no one else has; whether the nonemployee is authorized by the entity to communicate with its attorneys on matters within the nonemployee's scope of work to facilitate the attorney's representation of the entity; and whether the nonemployee's communications with the entity's attorneys are treated as confidential.

*Id.* at 324. In considering these factors in the context of a nurse case manager, we conclude the nurse case manager is not the functional equivalent of an employee of Employer such that communications between the nurse case manager and the attorney representing Employer are protected from discovery. First, as noted above, nurse case managers have statutory and regulatory duties intended to benefit both employees and employers. Second, unlike employees and agents of the employer, nurse case managers are expressly prohibited from engaging in any "non-rehabilitative" conduct pertinent to the compensability of an employee's claim for benefits. Third, a nurse case manager is obligated to provide his or her reports to all parties to the claim. Fourth, there is nothing in the statute or regulations that obligates a nurse case manager to keep confidential any communications it has with the attorneys for either party.

In short, we find nothing in the statutes, regulations, or case law to suggest that the nurse case manager in this case is an agent acting on behalf of Employer, or the functional equivalent of an employee of Employer, for purposes of invoking the attorney-client privilege. Thus, we conclude the trial court did not abuse its discretion in ordering Employer to respond to Employee's discovery requests.

*Attorney Work-Product Doctrine*

Finally, Employer asserts that communications between Employer, its counsel, and the nurse case manager are protected from discovery by the work-product doctrine. That doctrine, which originated in the United States Supreme Court's opinion in *Hickman v. Taylor*, 329 U.S. 495, 512 (1947), reflects a "general policy against invading the privacy

7

of an attorney's course of preparation [for litigation]." Over the years, various states, including Tennessee, adopted language from Rule 26(b)(3) of the Federal Rules of Civil Procedure. Tennessee's rule provides that, in ordering discovery, a trial court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Tenn. R. Civ. P. 26.02(3). Moreover, Tennessee's rule requires a party seeking to protect information from discovery "by claiming that it is privileged or subject to protection as trial preparation material" to "make the claim expressly and . . . describe the nature of the documents, communications, or things not produced or disclosed." Tenn. R. Civ. P. 26.02(5).

As explained by the Tennessee Supreme Court in *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012), "[a]n attorney's work product consists of those internal reports, documents, memoranda, and other materials that the attorney has prepared or collected in anticipation of trial." The Supreme Court's Special Workers' Compensation Appeals Panel further explained that the doctrine "prevents litigants from taking a free ride on the research and thinking of their adversary's lawyer." *Boyd*, 88 S.W.3d at 219. In circumstances where a party makes a showing that certain materials are otherwise discoverable, "the burden shifts to the party opposing discovery to show that the materials are work product." *Id.* at 221. Such a party must also "demonstrate that it has not waived its protection with regard to the documents being sought." *Id.*

The Tennessee Court of Appeals has concluded that information otherwise protected by the work product doctrine is discoverable if the work product designation has been waived "under very specific and narrow circumstances, namely when . . . the claim of privilege has been waived or has expired." *Sharp v. Tenn. DOC*, No. M2016-01207-COA-R3-CV, 2017 Tenn. App. LEXIS 740, at *8 (Tenn. Ct. App. Nov. 9, 2017). In *Arnold v. City of Chattanooga*, 19 S.W.3d 779 (Tenn. Ct. App. 1999), the Court of Appeals discussed waiver of the work product doctrine:

> The protections afforded litigants by [Rules] 26.02(3) and 26.02(4) [of the Tennessee Rules of Civil Procedure] are qualified, and equitable in nature. The privilege can be overcome upon a proper showing. In keeping with equitable considerations that must be examined in applying the privilege, courts have recognized exceptions to the work product doctrine. An example is where the attorney or client has waived the protection *by voluntarily disclosing the work sought to be protected*. Partial waiver of work product as well as attorney/client privilege can act to waive the entire privilege . . . . The scope of the waiver by disclosure is defined by the "fairness doctrine," which aims to prevent the prejudice and distortion that may be caused by one party's selective disclosure of otherwise protected information.

*Id.* at 787 (internal citations omitted) (emphasis added).

Here, Employer asserts that communications between its attorney and the nurse case manager qualify as attorney work product because "Counsel for Employer's mental processes are evident from the fact-gathering questions and remarks made by Counsel for Employer to [the nurse case manager]." Specifically, Employer argues that "counsel for Employer has had to communicate with [the nurse case manager] to find out the latest developments from Employee's treatment, which . . . has been critical for defending this claim in light of the constant pressure Employee has placed on her medical providers." Moreover, Employer asserts that were it to be required to disclose these materials, "Employee would obtain the mental processes of Counsel for Employer because these processes can be deduced from the nature of the questions and comments contained in the communications from Counsel for Employer to [the nurse case manager]." We are unpersuaded.

As discussed above, a nurse case manager is not a party to workers' compensation litigation and does not act solely for the benefit of the employer. A nurse case manager's role is essentially neutral. The nurse case manager is directed by regulations to assist the injured worker in rehabilitative activities and address return-to-work issues, and the nurse case manager is prohibited from engaging in any activity that places him or her in an adversarial role to either the employee or the employer. Both parties are required to provide information to and cooperate with the nurse case manager in the performance of his or her duties. Tenn. Comp. R. & Regs. 0800-02-07-.02(3)-(4). Hence, if an attorney for either party chooses to discuss matters with the nurse case manager that could be construed to reveal that attorney's mental impressions or legal theories of the case, that attorney risks waiving any protections afforded by the work product doctrine because any such mental impressions have been shared with a neutral third party.

In the present case, the record is unclear as to the precise nature of the information Employer claims was communicated to the nurse case manager that is protected by the work product doctrine. However, if any of those communications included the mental impressions or legal theories of the attorney, we conclude that the work product doctrine was waived when those mental impressions or legal theories were communicated to a neutral third party. As a result, we conclude the trial court did not abuse its discretion in ordering Employer to produce the requested information.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Lynnese Philalom | ) | Docket No. 2020-05-0763 |
| | ) | |
| v. | ) | State File No. 109377-2019 |
| | ) | |
| State Farm Mutual Automobile Ins. Co., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard September 28, 2021 |
| Compensation Claims | ) | via Microsoft Teams |
| Robert V. Durham, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 8th day of October, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| A. Allen Grant | | | | X | agrant@eraclides.com |
| Carmen Ware | | | | X | cyware@thewarelawfirm.com |
| Robert V. Durham, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov